340 So.2d 1097 (1976)
Peter SONIAT and Deanne Soniat
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 7440.
Court of Appeal of Louisiana, Fourth Circuit.
December 21, 1976.
*1098 Cockfield & Gravolet, James C. Cockfield, New Orleans, for plaintiffs-appellants.
Porteous, Toledano, Hainkel & Johnson, C. Gordon Johnson, Jr. and James S. Thompson, New Orleans, for defendants-appellees.
Before SAMUEL, REDMANN, LEMMON, MORIAL and BEER, JJ.
LEMMON, Judge.
This appeal by Deanne Soniat raises issues as to (1) the duty of a motorist to his passenger upon entering an uncontrolled intersection with another vehicle approaching from the left, (2) the imposition of penalties and attorney's fees against an uninsured motorist carrier who fails to pay any reasonable amount on the claim when the uninsured motorist is obviously liable, and (3) the sufficiency of the damages awarded.
The two-car collision occurred on a clear, dry afternoon at the intersection of Gallier and Johnson Streets, both of which were two-way, two-lane streets. There were no traffic control devices at the intersection.
Miss Soniat was a passenger in her father's car which at the time was being driven by Justin Benit (whom she subsequently married). Benit, traveling north on Gallier, collided with a car approaching from his left, which was being driven in an easterly direction on Johnson Street by Robert Smith, an uninsured motorist.
Miss Soniat sued Smith and joined her father's insurer, State Farm Mutual Automobile Insurance Company, both under its liability coverage for Benit's negligence and under its uninsured motorist coverage. After a trial on the merits judgment was rendered against Smith for all damages and *1099 against State Farm to the limits of its uninsured motorist coverage. Miss Soniat appealed from the dismissal of her claim against State Farm under its liability coverage for Benit's negligence.
At trial Benit testified: He was traveling about 30 miles per hour and looked to his right as he approached the intersection, letting his foot off the gas pedal; he then looked to his left and saw Smith's car, at which time he (Benit) was 15 to 20 feet back from the intersection and Smith was about even with the sidewalk and not yet into Gallier Street; and he then applied his brakes, but the front of his car struck the right front side of Smith's car, generally in the middle of the intersection.
Miss Soniat generally confirmed Benit's version of the occurrence. Smith did not appear at trial.
The investigating officer testified that Benit stated he looked to the right and then proceeded into the intersection, which somewhat contradicted Benit's testimony that he looked in both directions.[1] The officer measured 19 feet of skid marks by Benit's car and 13 feet by Smith's.
Liability
The statutes requiring that, when two vehicles enter an intersection at approximately the same time, the driver on the left yield the right of way to the driver on the right establish only the duty of the motorist on the left.[2] The undefined duty of the motorist with the so-called directional right of way is a legal quagmire in which our intermediate courts have floundered, with some decisions effectively according such a motorist an unqualified right of way.
This court correctly held in Gutelius v. Phoenix Ins. Co., 266 So.2d 717 (La.App. 4th Cir. 1972) that these statutes neither convert one street into a superior one, having an unqualified right of way, nor provide mechanical rules for determining liability after an accident by the mere direction of vehicles. Gutelius recognized not only that a greater degree of care is required of a motorist with only a directional right of way than of one with an unqualified right of way, but also that every motorist who approaches an uncontrolled intersection with a street of equal dignity has some degree of duty, depending on the circumstances, to proceed cautiously and to determine before entering the intersection whether he can safely proceed across. Fault in a collision is determined by judging the conduct of each motorist under all the circumstances of the particular case, including consideration of the so-called directional *1100 right of way. See also Smith v. Borchers, 243 La. 746, 146 So.2d 793 (1962).
The determination in this case involves virtually undisputed facts. While Benit's testimony must be reviewed carefully because he knew at trial that his then wife would benefit by the greater insurance coverage if he were found to be negligent, his testimony was at least consistent with, and perhaps less incriminating than, his spontaneous statement to the investigating officer at an unsuspicious time.
More important in this case is the mute evidence of Benit's skidding for 19 feet before colliding with some force (enough to cause "heavy damage" to both cars) into the side of Smith's car in the center of the intersection. This physical evidence indicates that Benit did not look to his left and slow his speed sufficiently, at a point far enough in advance of the intersection, to be in a position to determine before entering the intersection whether he could make the crossing safely. Had Benit looked to his left earlier or brought his car under control earlier, as he had a duty to do in the exercise of reasonable care due to his passenger, he could have avoided the accident. Thus, whether or not Benit's conduct discharged his arguably lesser duty to the unquestionably negligent driver approaching from the left, his conduct was substandard when measured against the duty of reasonable care due to his guest passenger.
We accordingly modify the judgment as to Benit's liability and hold that the negligent acts or omissions by Smith and Benit were concurrent legal causes of the accident.
Damages
In addition to $120.30 in lost wages and $1,806.75 in medical expenses, the trial court awarded general damages to Miss Soniat as follows:[3]

 Injury to teeth $ 2,000.00
 Injury to jaw and facial lacerations $ 1,500.00
 Injury to knee $ 8,500.00
 __________
 Total $12,000.00

In the accident Miss Soniat sustained three fractured teeth, which required smoothing, filling and capping; temporal mandibula joint syndrome, which caused intense jaw pain and earache for several weeks; a laceration under the chin which required four sutures and left minimum scarring; a puncture of the tongue; and a severe laceration of the knee which required seven sutures and temporary insertion of a drainage tube. The trauma to the knee also caused a torn cartilage which required surgical repair and left Miss Soniat with a 5% Permanent residual disability of the leg.
Immediately after the February 11, 1973 accident Miss Soniat was confined to bed for about two weeks. After the surgery two weeks later she was incapacitated for almost a month and returned to work on crutches. (Her loss of wages was minimal because her employer gratuitously paid her salary during most of her absence.) The orthopedic surgeon treated her through December 3, 1973, at which time she still complained of aching after walking. The doctor, however, expected a complete return to all normal activities.
We have examined the record and find no abuse of the much discretion accorded the trial court by C.C. art. 1934(3).
Penalties and Attorney's Fees
Miss Soniat's counsel testified that, prior to filing suit, he discussed the claim and the question of penalties with State Farm's supervisor, *1101 who opined that Smith was solely liable and offered to pay $5,000.00 (the maximum limit under uninsured motorist coverage), but only on the condition that Miss Soniat also compromise her demand under the liability coverage. This testimony was not contradicted.
R.S. 22:658 condemns an insurer to pay penalties and attorney's fees when it arbitrarily refuses to pay a claim within a specified time. The statute is not applied when the insurer has a reasonable basis to defend to claim. Here, State Farm had been served with affidavits constituting prima facie proof that Smith was uninsured [see R.S. 22:1406D(6)(b)], and all of the facts available to State Farm compelled the conclusion that Smith was uninsured and was at least concurrently liable. There was no reasonable basis for a contrary conclusion (and indeed the uncontradicted evidence was that this was State Farm's supervisor's conclusion). Since the uninsured motorist coverage of State Farm's policy applied whether or not there was an insured co-tortfeasor,[4] and since State Farm has asserted no reasonable basis for denial of the claim under this coverage, we conclude the denial was arbitrary.
State Farm argues merely that is is absolutely entitled to a judicial determination of liability of the uninsured motorist, citing Bubrig v. Phoenix of Hartford Ins. Co., 306 So.2d 60 (La.App.4th Cir. 1974). The facts in the Bubrig case, however, provided a reasonable basis for questioning liability; the facts in this case do not, and any denial of this claim solely on the basis of liability of the uninsured motorist must be deemed unreasonable.
We conclude that, since State Farm's policy afforded uninsured motorist coverage to Miss Soniat whether or not Benit was liable, and since State Farm could not reasonably deny its insured's claim on the grounds that Smith was not liable or not uninsured, State Farm was obliged by R.S. 22:658 to tender unconditionally to its insured the amount that it reasonably deemed to be due in satisfaction of her claim under that coverage.[5]
In this respect we reject State Farm's contention that it did tender the amount due under the uninsured motorist coverage. An offer to compromise an entire claim, only part of which is reasonably in dispute, does not constitute an unconditional tender of payment of that portion which is unquestionably due. Adler v. Hospital Service Assn. of N.O., 278 So.2d 177 (La.App.4th Cir. 1973). State Farm's offer was merely thatan offerand did not discharge its obligation to pay unconditionally the amount reasonably determined to be due under its uninsured motorist coverage.
State Farm paid unconditionally only two medical bills totaling $532.50, out of total undisputed medical bills exceeding *1102 $1,800.00. Had State Farm unconditionally tendered the unquestioned special damages plus some reasonable amount in payment for the general damages, then the penalty provision would not apply. Since State Farm had no reasonable basis for its failure to tender a reasonable amount in unconditional payment of its obligation under the policy, we accordingly assess the statutory penalty of 12% of $4,467.50 ($5,000.00 less $532.50 paid.)[6]
As to the amount of attorney's fees, Miss Soniat's attorney testified that he spent, after demand and prior to trial, a total of 41 hours on the case. The record shows that he participated in trial and thereafter perfected the appeal and apparently did the necessary preparation to present two briefs and an oral argument. We cannot, however, attribute all of this work to collection of the amount due under the uninsured motorist coverage, which was a maximum of $5,000.00. Since a reasonable payment under that coverage would have approached or equaled $5,000.00, we award attorney's fees of $1,000.00.
Decree
For these reasons the judgment of the trial court is affirmed in part and amended and recast in part as follows:

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Deanne Soniat and against Robert Smith and State Farm Mutual Automobile Insurance Company in solido in the sum of $13,927.05, plus interest from the date of judicial demand until paid and all costs, with a credit to State Farm Mutual Automobile Insurance Company for $532.50 previously paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Deanne Soniat and against State Farm Mutual Automobile Insurance Company for a penalty of $536.10 and attorney's fees in the amount of $1,000.00.

IT IS FURTHER ORDERED, AJUDGED AND DECREED that there be judgment in favor of Peter G. Soniat and against Robert Smith in the sum of $640.00, plus interest from the date of judicial demand until paid, and all costs.
AMENDED AND RECAST IN PART, AFFIRMED IN PART.
BEER, Judge (dissenting).
I respectfully dissent.
I am not in full accord with the majority's description of Benit's testimony and, accordingly, submit my description as follows:
He was proceeding north on Gallier Street at a speed of about 30 MPH, although he had, just prior to the collision, slowed down to about 25 MPH as he passed an adjacent playground. His approach to the intersection in question was unusual as I perceive it from the transcript. Essentially, he describes his actions as follows: he looked first to his right, saw the way was clear, took his foot off of the accelerator, looked to his left, saw Smith's car (approaching the intersection) for the first time and observed the Smith car to be slowing down, but, nevertheless, applied his brakes. A split second later, the collision took place.
Other factors not noted in the majority opinion are as follows:
Officer Ronald Conlan, of the New Orleans Police Department, determined, from the relative location of the debris and other physical factors, that the collision apparently occurred just about in the middle of the intersection and damaged the right front side of the Smith vehicle and the front of *1103 the Soniat vehicle. He noted that both streets were blacktopped and of equal width.
Smith did not testify.
From the manner in which the district court judgment is framed, it is apparent that the trial judge concluded that the accident resulted solely from the negligence of Smith. State Farm is cast only in its capacity as the uninsured motorist insurer of the Soniat vehicle and not as the omnibus insurer of Justin Benit, the authorized driver of the Soniat automobile. I view this to indicate that the trial court made a factual determination that the accident was the proximate result of Smith's negligence.
Deanne Soniat (Benit) vigorously contends that the accident was the result of negligence on the part of both drivers. Since the amount awarded to her for special and general damages is in excess of the uninsured motorist policy limit of $5,000 and since Smith is apparently unable to respond in payment, her vigorous efforts to reverse the judgment, insofar as Benit's alleged negligence is concerned, are quite understandable.
Yet, the testimony of Mrs. Benit regarding the facts of the accident must, necessarily, be closely scrutinized, for when this case came to trial in the district court, she had married Justin Benit.
Thus, while I agree with Judge Redmann's opinion in Gutelius, I am, in this case, more persuaded by those cases which require us to attribute great weight to the trial court's factual determinations and to accept them as binding upon us unless manifestly erroneous.
This is not to suggest that either Mr. Benit or Miss Soniat (now Mrs. Benit) calculatedly altered or in any way modified their testimony in order to put into play factors which could result in greater exposure of the insurer. Yet, the many subtle nuances of expression, voice modulation and appearance on the witness stand which were all available to the trial judge and are not available to us could have indicated various subconscious persuasions vital to a credibility determination or, more important, as a signal to accept or reject certain testimony. Such factors would play a part in those credibility determinations that would ultimately lead to the trial judge's final conclusion that Benit was, in fact, free from fault and that the accident resulted solely from Smith's negligence. This conclusion is, I believe, strengthened further by the fact that the record is barren of any testimony from Smith, the other driver. Since no witnesses testified regarding the actual moment of collision except Benit and the young lady who subsequently became his wife, the trial court had no other source from which to draw corroborative or contradicting evidence. Thus, the importance of that court's appraisal of the testimony is heightened.
I believe that in the particular circumstances of this case, the manifest error rule has greater force than the applicability of the legal conclusion correctly set forth by Judge Redmann in Gutelius.
I next consider the correctness of the trial court's refusal to impose attorney fees and penalties upon State Farm for its alleged failure to timely tender the total amount of its uninsured motorist coverage under LSA-R.S. 22:658.
Whether the company's refusal to pay was so lacking in foundation for cause as to fall within the scope of this provision is primarily a question of fact. Cryer v. Gulf Ins. Co., 276 So.2d 889 (La.App.1st Cir., 1973). Moreover, because of its penal nature, the statute is to be strictly construed. Blackwell v. Daigle, 317 So.2d 18 (La.App. 3rd Cir., 1975).
Notwithstanding the fact that State Farm had been served with affidavits indicating that Smith (as well as Spencer) was uninsured on the date of the accident, there still remained in serious dispute the question of the proximate negligence of Smith and Benit and the consequent type of liability (tort or contractual) of State Farm. Appellant's counsel contends, in brief, that "... Juan Spencer and Robert Smith, did not defend themselves at the trial personally or through counsel. The investigation *1104 of the accident from the outset attests to the negligence of the uninsured motorist and therefore his liability was established."
In Bubrig v. Phoenix of Hartford Ins. Co., 306 So.2d 60 (La.App.4th Cir., 1970), we observed that it was necessary that a plaintiff seeking recovery under the uninsured coverage provisions of the policy prove the uninsured status and the negligence of the defendant. In that case, the defendant filed an answer denying the negligence of his son (the actual driver) and denied his uninsured status. When the trial began, stipulations were entered indicating there was no insurance coverage for the defendant or his son, but the case went to trial on the issue of liability. We stated that: "... the plaintiff has the burden of proof, and it was encumbent upon the plaintiff to prove these contested issues, including the uninsured status of the defendant...." Then, turning to the issue that concerns us here, we stated:
"Furthermore, the record supports the trial judge's conclusion that the accident was caused by Wilkerson . . . But, it was not arbitrary and unreasonable for Phoenix to require plaintiff to prove her case and to decline payment in the meantime. Thus, imposition of statutory penalties and attorneys' fees was not warranted."
I find no manifest error in the trial court's apparent determination that the actions of State Farm were not arbitrary and capricious since there was a dispute regarding the proximate negligence of Smith and/or Benit. Furthermore, even though it was apparent that Deanne Soniat had experienced a reasonably serious injury, there was no absolute indication that its "value" was, without doubt, the total of the uninsured motorist coverage.
Accordingly, I respectfully dissent.
NOTES
[1] The discrepancy, if any, was an insignificant one, since Benit obviously looked to his left in order to perceive the necessity to apply his brakes. The problem is whether he looked sufficiently in advance of the intersection and whether he had his vehicle under control before entering the intersection.
[2] See R.S. 32:121. which provides:

"A. The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.
"B. When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left, shall yield the right of way to the vehicle on the right.
"C. The right of way rules declared in Subsections A and B are modified at through highways and otherwise as hereinafter stated in this Part. Acts 1962, No. 310, § 1."
See also New Orleans City Code, 1956, § 38-99, which provides:
"(a) Upon entering or crossing a boulevard from any street on which no traffic-control sign or signal is erected, the driver of a vehicle or operator of a streetcar shall proceed cautiously, yielding to vehicles which are within the intersection or approaching so closely as to constitute an immediate hazard.
"(b) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.
"(c) When two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.
"(d) The right-of-way rules declared in paragraphs (c) and (b) are modified at through streets and otherwise as stated in this Chapter. (M.C.S., Ord. No. 3816, § 1, 6-6-68.)" (Emphasis supplied)
[3] This total amount of $13,927.05 is itemized in the reasons for judgment. However, the judgment, apparently prepared by counsel, fails to hold Smith liable in solido for $5,000.00, decreeing him liable only for $8,927.05 while separately holding State Farm liable for $5,000.00 (minus $532.50 paid). We accordingly recast the judgment to correct this oversight.

That portion of the judgment against Smith awarding $640.00 in property damage to Miss Soniat's father has not been questioned in this appeal.
[4] Under the uninsured motorist coverage of this policy State Farm contracted:

"(t)o pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury,' sustained by the insured, caused by accident and rising out of the ownership, maintenance or use of such uninsured automobile...."
Nowhere in the policy was there a provision which limited this coverage to a situation in which the uninsured motorist was solely liable.
The policy does contain the following limiting provision which applies when there is concurrent entitlement to recovery under the liability coverage of the policy:
"Any payment made under this Part to or for any insured shall be applied in reduction of the amount of damages which he may be entitled to recover from any person insured under Coverage A."
Therefore, this policy specifically recognizes that when there is concurrent liability for an accident in which the cotortfeasors are an uninsured motorist and a person insured under the policy's bodily injury liability coverage, payment is due under the uninsured motorist coverage, although such payment may subsequently be applied in reduction of the amount due under the bodily injury liability coverage.
[5] State Farm's unreasonableness in this case was accentuated by the fact that it was certain to be liable to Miss Soniat in the same amount (subject to limits of liability) under one coverage or the other, or both.
[6] The undisputed medical evidence and expenses indicates that an amount at or near the $5,000.00 limits of coverage should have been tendered unconditionally. Accordingly, we use the sum of $5,000.00 in assessing penalties and attorney's fees, although we note that the imposition possibly could have been avoided by the unconditional tender of some lesser amount (necessarily an amount in excess of the undisputed medical expenses and lost wages) as the amount deemed by State Farm in good faith to be the amount reasonably due in satisfaction of its obligation.