457 So.2d 53 (1984)
Helen Smith KIKENDALL
v.
AMERICAN PROGRESSIVE INSURANCE COMPANY.
83 CA 0979.
Court of Appeal of Louisiana, First Circuit.
July 31, 1984.
*55 Elaine W. Guillot, Slidell, for plaintiff-appellee.
Albert Dale Clary, Baton Rouge, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit in contract by an insured against her insurer seeking to recover the loss suffered from the theft of her vehicle and for statutory penalties for arbitrary failure to pay the claim. After a trial, the district court rendered judgment awarding the insured $9,000 for the loss of her vehicle and awarded statutory penalties that included an attorney fee of $1,500. The insurer took this suspensive appeal.

FACTS
Helen Smith Kikendall was the owner of a tan 1981 Toyota pickup truck. Her son, Tommy, was the principal driver of the vehicle. The vehicle was insured on August 20, 1981, under a policy of insurance (which was in full force and effect at all times pertinent to this suit) issued by Progressive American Insurance Company (Progressive) through its agent, Floyd Fogg Insurance Agency, Inc. On August 24, 1981, Mrs. Kikendall reported the theft of the truck to the police and the agent of her insurer.
On October 13, 1981, a pickup truck was discovered by Staff Sergeant Robert Arthurs, St. Tammany Parish Sheriff's Department, in a wooded area near the Fish Hatchery Road near Lacombe, Louisiana. The vehicle was stripped and burned. It was later identified as the vehicle reported stolen by Mrs. Kikendall.

PROOF OF THEFT
The trial court found as a fact that the vehicle had been stolen. Progressive contends that the district court was clearly wrong in this finding. Specifically, appellant argues that this factual finding is not supported by credible testimony.
In the instant case, all of the evidence was presented by live testimony. This court, in Gould v. State, Louisiana Department of Corrections, 435 So.2d 540, 543 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1107 (La.1983), discussed the standard of review applicable to factual findings based on live testimony as follows:
As to facts, Canter v. Koehring Company, 283 So.2d 716 (La.1973), as refined by Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), delineates our review of facts as first an ascertainment that there is in the record `a reasonable factual basis' for the trial court's factual findings and second a determination from the record that the trial court's factual findings are not `clearly wrong.' Then, if we, as an intermediate appellate court, find a reasonable basis for the factual findings and such findings are not clearly wrong (or manifestly erroneous), we are admonished not to disturb such findings of fact.
The basis for the Canter-Arceneaux rule is that the trier of fact, actually hearing and observing the witnesses give live testimony, is in a better position to evaluate credibility than a reviewing court on the intermediate appellate level, which at best can only study the written words of a cold record. Stated another way, according to Canter-Arceneaux, where there is a credibility issue or conflict in the testimony and the trial judge (trier of fact) has had the opportunity to observe the demeanor of the witnesses as they testify and to listen to the nuances of their oral testimony, great weight must be given to the factual conclusions of the trier of fact and they should not be disturbed unless clearly wrong.
Progressive presented three witnesses at trial who were in the Fish Hatchery Road area on Sunday afternoon, August 23, 1981: Martin Giordelli, Mike Cousin and John Cousin, Jr. All three were in the area around 2:00 p.m. attempting to pull out *56 John's truck which had gotten stuck in the mud earlier that day. They all testified that they saw two Toyota pickup trucks, one black and one tan (or beige), in the area that Sunday afternoon. Both vehicles were occupied by two young white males in their late teens or early twenties. They saw both vehicles get stuck in the mud. Giordelli and Mike Cousin testified that they saw the tan truck again three or four weeks later in the same area burned and stripped.
Tommy Kikendall testified that he used the Toyota truck to get to work at his parent's gas station at 9:00 a.m. Sunday, August 23, 1981. He remained at work until 5:00 p.m. when his father picked him up. The truck was left overnight on the left side of the station for repairs. When he arrived at work at 7:00 a.m. the next day, the truck was gone. Upon discovering the theft, he called his parents. Tommy also testified that he personally knew other people who owned trucks similar to his and that there are "numerous trucks like that around Slidell."
Melanie Rosano, a friend of Tommy for six years, testified that she went by the station on Sunday around 12:30 p.m. Tommy was there and she saw the truck parked on the left side of the station. She stayed around 45 minutes. When she left, the truck was still parked at the station.
Cherry Kikendall, Tommy's wife (married December 11, 1982), testified that she ate lunch with Tommy on Sunday around 1:00 p.m. She also saw the truck parked on the left side of the station.
After reviewing the evidence, we find that there is a reasonable factual basis in the record to support the district court's ruling that the vehicle was stolen. The district court was not clearly wrong in finding that the truck was stolen or that Progressive failed to show that the Kikendalls caused the demise of the truck. This assignment of error is without merit.

ADMISSIBILITY OF PHOTOGRAPHIC LINEUP
Detective Charles Edwards, Slidell Police, was assigned to investigate the reported theft. He was informed by Sergeant Arthurs that several witnesses had spotted a truck similar to the missing truck on Sunday afternoon, August 23, 1981, in the area where it was eventually recovered. Detective Edwards interviewed one of those witnesses, John Cousin, Sr., (John Cousin, Jr. was also a witness) in the presence of Carl Ellis, a Progressive claim representative. Detective Edwards showed Cousin a photographic lineup. One of the pictures included in the lineup was of Tommy Kikendall. Cousin identified Tommy Kikendall as one of the persons he saw in the tan truck on the Fish Hatchery Road area that Sunday afternoon.
Progressive attempted to offer into evidence the photographic lineup. Kikendall objected asserting that Cousin, Sr. should be the one to testify concerning the lineup identification and not Detective Edwards. Progressive argued that the evidence was admissible because Cousin, Sr. was deceased. The trial court allowed the evidence to be introduced subject to the objection.
Progressive contends on appeal that the trial court did not rule on the admissibility of this evidence at trial and, after receiving the post-trial memorandums, apparently disallowed this evidence because no mention of it was made in reasons for judgment. Progressive contends that the district court erred in not considering this evidence.
Hearsay evidence is generally described as testimony in court, or written evidence, of a statement made out of court, the statement being offered to show the truth of matters asserted therein and thus resting for its value upon the credibility of the out-of-court asserter. State v. Hayes, 414 So.2d 717 (La.1982); State In Interest of Clark, 400 So.2d 334 (La.App. 4th Cir. 1981). Such evidence is generally inadmissible as being unreliable because it is based on statements made by persons who are not before the court, have not been sworn and are not available for cross-examination. *57 Lasalle Pump & Supply Co., Inc. v. Louisiana Midland Railroad Co., Inc., 433 So.2d 745 (La.App. 3rd Cir.1982), writ denied, 435 So.2d 450 (La.1983); Jones v. Ledet, 383 So.2d 1308 (La.App. 3rd Cir.1980). There are well-recognized exceptions to the hearsay rule. Declarations by a deceased person which are admissible as exceptions to the hearsay rule are dying declarations, statements against interest and, in limited instances, statements pertaining to family history, relationship and pedigree. Miller v. Miller, 226 La. 273, 76 So.2d 3 (1954); Whittington v. Sowela Technical Institute, 438 So.2d 236 (La.App. 3rd Cir.1983), writs denied, 443 So.2d 591, 592 (La.1983); Baker v. Life General Security Insurance Company, 405 So.2d 1162 (La.App. 1st Cir. 1981); D. Binder, The Hearsay Handbook (1975); McCormick's Handbook of the Law of Evidence (E. Cleary 2nd ed. 1972).[1]
In the instant case, Progressive attempted to introduce the evidence to show the truth of matters asserted, i.e., that Tommy Kikendall was in a tan pickup truck on Sunday afternoon in the Fish Hatchery Road area where the Kikendall truck was eventually found. Detective Edwards' testimony concerning Cousin Sr.'s identification of Tommy Kikendall is hearsay. The statements made by Cousin, Sr. to Detective Edwards concerning the photographic lineup identification do not come within any of the hearsay exceptions applicable to declarations by a deceased person. Accordingly, Detective Edwards' testimony concerning statements made to him by Cousin, Sr. is inadmissible hearsay. This specification of error is without merit.

VALUE OF VEHICLE
Mrs. Kikendall completed and mailed to Progressive an "AFFIDAVIT OF VEHICLE THEFT" in which she claimed $10,568.65 for the theft of her vehicle.[2] The insurance policy issued by Progressive contained the following coverage for theft of the vehicle:
PART IIIPHYSICAL DAMAGE
Coverage DComprehensive. To pay for direct and accidental loss of or damage to the automobile due to any cause, except collision or upset. For the purposes of this coverage it is understood that damage caused directly by tornado, cyclone, windstorm, hail, any falling object, and damage resulting from theft, breakage of glass, earthquake, explosion, riot, insurrection or civil commotion, shall not be deemed a loss caused by collision or upset.
. . . . .
Limit of Liability. The limit of the company's liability for loss shall not exceed the least of:
(a) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss; or
(b) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation; or
(c) the applicable limit of liability stated in the declarations; provided, the amount of each separate loss, when determined, shall be reduced by the applicable deductible sum, if any, stated in the declarations.
(Underscoring added)
Further, the "DECLARATIONS" page of the policy showed that the 1981 Toyota pickup truck had comprehensive coverage, with liability limited to "ACTUAL CASH VALUE LESS $250 DED."
Keith Fogg, an employee of Floyd Fogg Insurance Agency, testified that their agency issued the Progressive insurance policy to Mrs. Kikendall. Mrs. Kikendall had insurance with Commercial Union the previous year through the same agency. *58 Keith Fogg persuaded Mrs. Kikendall to renew her policy with Progressive because he could save her money on her premiums. Mrs. Kikendall agreed and an insurance application was filled out for the Progressive policy. The policy period was from August 20, 1981, to August 20, 1982. The insurance application indicates that the vehicle was inspected on August 20, was in excellent condition with no existing damage and had a "Current Market Value or Declared/Stated Value" of $9,000.00.
Keith Fogg testified that the current market value of the vehicle is supplied to the insurance company by the insured through the insurance agency. He admitted that, ordinarily, the insurance company would not have any independent knowledge of the condition of the vehicle. However, the company had the option to review the stated value by referring to the blue book and could notify the agency that the value was incorrect. Fogg did not know if Progressive agreed with the $9,000 value placed on the insurance application.
The trial court awarded Mrs. Kikendall $9,000 for the stolen vehicle for the following written reasons:
One other issue left for determination of this Court is the value of the 1981 Toyota Pickup Truck. Testimony shows that the truck had recently been completely refurbished. On August 20, 1981, 3 days before the issuance of the policy, an Agent of Progressive determined the current market value or declared value, after inspection of same to be $9,000.00. Certainly, the value of the truck three days later must be the same and the Court so finds.
Progressive contends that the district court committed error in finding that the truck's actual cash value when stolen was $9,000 and contends that no competent evidence was presented by Mrs. Kikendall which sufficiently proved and supported the award.
Progressive and Kikendall are bound by the terms of their insurance contract. La.C.C. arts. 1901 and 1945; Gordon v. Unity Life Ins. Co., 215 La. 25, 39 So.2d 812 (1949); Messina v. Metropolitan Life Insurance Company, 431 So.2d 911 (La.App. 2nd Cir.1983); Lambert v. Mutual Life Insurance Company of New York, 431 So.2d 23 (La.App. 1st Cir.1983), writ denied, 438 So.2d 571 (La.1983); Hall v. National Life and Accident Insurance Company, 383 So.2d 74 (La.App. 3rd Cir. 1980). The contract provides, in pertinent part, that the limit of Progressive's liability is the lesser of:
(a) the actual cash value of the automobile at the time of loss;
(b) the cost of repair or replacement of the automobile with other of like kind and quality, less depreciation; or
(c) the applicable limit of liability stated in the declarations (actual cash value).
Under the contract, this liability is subject to a $250 deductible. The insurer is also entitled to a credit for salvage value, if there is any. Sibley v. Insured Lloyds, 442 So.2d 627 (La.App. 1st Cir.1983).
The burden is on Kikendall to prove the facts necessary for recovery. Roy v. Commercial Union Assurance Company, 385 So.2d 1273 (La.App. 3rd Cir.1980). The evidence indicates that the truck was a total loss. However, the record does not reflect the actual cash value of the truck at the time of loss or the replacement cost less depreciation (to show which is lesser), and no evidence was presented concerning the vehicle's salvage value, if any. The district court judgment did not recognize the $250 deductible.
Mrs. Kikendall argues that the $9,000 value placed on the truck and accepted by Progressive in issuing the insurance policy was sufficient proof of the value of the vehicle before the theft. Since the vehicle was stolen three days after the insurance was issued, she contends that the value must be the same. Compare Schecter v. Camden Fire Insurance Association, 141 So.2d 451 (La.App. 4th Cir.1962). The trial court accepted this evidence as being sufficient to establish the actual cash (market) value of the vehicle before the theft as $9,000.
*59 The value of $9,000 assigned to the vehicle was supplied by Mrs. Kikendall. There is no evidence in the record to show how she arrived at that value. Further, there is no evidence that this value represents the actual cash value of the vehicle prior to the theft. On the contrary, evidence was presented by Progressive to rebut and contradict this value.
Larry Stansbury, service and body shop manager at Charlie Simmons Toyota, was accepted as an expert in the fields of automobile repair and appraisal. He testified that the truck was purchased from Charlie Simmons Toyota. He saw the truck frequently and almost on a daily basis at times. The truck was brought in several times for warranty work which was denied because of the abuse it had sustained. In June or July, Stansbury observed that the truck had a new paint job. Stansbury testified that it was a very sloppy job and "there were scratch marks, still ripples in the finish and so forth, and the paint was full of runs." Stansbury could not say what the retail value of the vehicle was but gave a wholesale value for it of between $3,000 and $5,000.
Based on this evidence, we find that the trial court was clearly wrong in finding that the vehicle had an actual cash (market) value of $9,000 prior to the accident. Further, there is not enough evidence in the record for this court to arrive at the market value of the truck prior to the theft.
Under these circumstances, we feel it proper to set aside the $9,000 award of the trial court and remand the matter to receive additional evidence of value in accordance with the views expressed herein.

STATUTORY PENALTIES
The trial court assessed Progressive with statutory penalties which included an attorney fee of $1,500. Progressive contends that the district court erred in awarding statutory penalties because it was not arbitrary, capricious or without probable cause in denying payment of the claim.
A trial court's conclusion concerning the assessment of statutory penalties is in part a factual determination which should not be disturbed in the absence of a finding that it is manifestly in error. Sibley v. Insured Lloyds, 442 So.2d at 632; Meshell v. Insurance Company of North America, 416 So.2d 1383 (La.App. 3rd Cir. 1982). La.R.S. 22:658 provides that an insurer who arbitrarily, capriciously or without probable cause refuses to pay a claim within 60 days of satisfactory proof of loss shall be subject to a penalty of 12% of the amount of the loss, plus a reasonable attorney fee. This statute is penal in nature and must be strictly construed. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983); Sibley v. Insured Lloyds, 442 So.2d at 632. This statute is not to be applied when the insurer has a reasonable basis to defend against the claim. Soniat v. State Farm Mutual Automobile Insurance Company, 340 So.2d 1097 (La.App. 4th Cir.1976).
There was sufficient evidence to justify Progressive's assertion that the vehicle was not stolen and entitling it to litigate the matter without being assessed with statutory penalties. Prior to the death of John Cousin, Sr., Progressive had evidence which showed Tommy Kikendall in possession of the stolen vehicle in the area where it was ultimately recovered at the approximate time the theft occurred. This evidence also contradicted the Kikendall version of what happened. Progressive had a reasonable basis to defend against Kikendall's theft claim which precludes an award of statutory penalties. This specification of error has merit, and this portion of the district court judgment is reversed.

DECREE
For the foregoing reasons, the judgment of the district court finding Progressive liable for the value of the Kikendall vehicle is affirmed; the award of $9,000 is set aside, and this issue is remanded to the district court to take additional evidence on the value of the vehicle; and the award of *60 statutory penalties is reversed, and that portion of the claim is dismissed with prejudice. Progressive is cast for all costs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.
NOTES
[1] It is not prejudicial error to allow hearsay testimony about a witness's identification of another when the witness personally appears and testifies at the trial. State v. Vaughn, 378 So.2d 905 (La.1979).
[2] This amount represents the total cash price of the vehicle when purchased on December 15, 1980.