ALFORD, Judge.
This is an appeal from a judgment which annulled a transfer of property between James Burns (plaintiff) and Frank and Lillian Burns (defendants), plaintiff’s nephew and his wife.
By deed dated December 7, 1981, plaintiff, an 86-year-old man, transferred a tract of land and a home to defendants for the sum of $5,000, plus “other valuable consideration.” The other valuable consideration *979 was expressed by plaintiff in an affidavit as being the past care provided by defendants, in addition to the charge that defendants care for plaintiff for the rest of his life. Plaintiff was also granted a usufruct on the land. The transaction was passed before Allen Pierson, a notary, at his law office.
Plaintiffs mental state began to deteriorate, and it was stipulated on May 28, 1982, that he be interdicted. On December 2, 1982, plaintiff filed suit through his curator to set aside the transaction, alleging that he lacked the proper mental capacity to contract, and that there was a failure of consideration.
The trial court found that plaintiff did not have the proper mental capacity to contract, and that defendants and people with whom plaintiff conversed should have known that plaintiff was mentally incompetent because he was senile. The trial court also found that there was a failure of consideration in that defendants failed to care for plaintiff for the rest of his life, and that they interfered with'the administration of plaintiffs affairs after he was known to be an interdict. Plaintiff was ordered to pay defendants $9,141.56, which was the value of their services rendered since the date of the transaction and to return the $5,000 actually paid by defendants for the property. The trial court held that the services rendered prior to the sale were purely gratuitous.
On appeal, defendants contend that the trial court erred in finding that there was a failure of consideration. Defendants also contend that the trial court erred in finding that they were intermeddlers.
MENTAL CAPACITY
In the absence of a special exception, the presumption is that all persons possess the capacity to contract. La.Civ. Code art. 1782 [1]; Meadors v. Pacific International Petroleum, Inc., 449 So.2d 26 (La.App. 1st Cir.1984), writ denied, 450 So.2d 964 (La.1984). Such an exception is provided by La.Civ. Code art. 1788. This article provides that the party must prove that he was incapacitated at the time of the transaction, and that it was known by those who generally saw and conversed with him, to be in a state of mental derangement, or that the person who contracted with him was acquainted with his incapacity. An exception to the presumption to contract must be shown quite convincingly and by the great weight of the evidence. First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3rd Cir.1977).
At trial, defendants testified that plaintiff did not seem to have a bad memory, and that he understood the terms of the transaction. Mr. Pierson testified that he explained all terms of the transaction to plaintiff, and that he fully understood. Mr. Pierson further testified that plaintiff’s behavior did not appear to be odd or bizarre. This was corroborated by testimony of Ms. Iris Brann, Frank’s sister.
The trial court based its decision on the deposition of Dr. Richard Strobach, who was accepted as an expert in the field of psychiatry, and the failure of defendants to produce medical testimony. Dr. Strobach, who examined plaintiff on March 5, 1982, ■testified that plaintiff suffered from organic brain syndrome, which in layman’s terms, is senility. He stated this is a slow, progressive deterioration that does not suddenly occur. Dr. Strobach further testified that plaintiff would not have been able to understand the terms of the transaction, that he could not abstract difficult problems such as a usufruct, and that plaintiff would not have had a strong memory in December of 1981. Dr. Strobach stated that plaintiff had a severe impairment of his recent memory ability. Dr. Strobach testified that in dealing in a transaction such as the one involved in this case, it should have been obvious to defendants *980 that plaintiff was confused and had problems with his memory.
The trial court is in a much better position to observe the witnesses than this court. It is clear that the trial court gave great weight to the testimony of Dr. Stro-bach after hearing all of the witnesses. After a careful review of the record, we cannot say that the trial court was clearly wrong in holding that plaintiff was incapacitated at the time of the transaction and that defendants were acquainted with his incapacity.
FAILURE OF CONSIDERATION
Defendants next contend that the trial court erred in holding that there was a failure of consideration. The trial court stated in its reasons for judgment that defendants interfered with plaintiffs usu-fruct by cutting timber, locking plaintiff in his home, allowing their son to live in plaintiff’s home rent free, evicting other persons from the property in question and locking the water well. The trial court also concluded that defendants failed to take care of plaintiff for the rest of his life, which constituted a failure of consideration.
Plaintiffs granddaughter, who lived near plaintiff and helped to look after him, testified that Frank rarely helped plaintiff, and that on several occasions, defendants “abandoned” plaintiff for up to one week. This was denied by defendants. The trial court, having heard this conflicting testimony, resolved the conflict in favor of plaintiff. It is well settled that the trier of fact actually hearing and observing the witnesses give live testimony is in a better position to evaluate the credibility of the witnesses than a reviewing court on the intermediate level, which at best can only study the written words on a cold record. Kikendall v. American Progressive Ins. Co., 457 So.2d 53 (La.App. 1st Cir.1984). We cannot say that the trial court was clearly wrong in finding that there was a failure of consideration.
In brief, both parties assert that the transaction is an onerous donation. Frank testified that it was the intention of plaintiff to give the property to him because plaintiff “wanted to keep in in the family.” A disguised transfer appears on its face to be a valid sale but is intended by the parties to be a donation or gift. Brumfield v. Brumfield, 457 So.2d 763 (La.App. 1st Cir.1984). In the present case, the transfer, although disguised as a sale, appears to be both an onerous and remunerative donation.[2]
Louisiana Civil Code article 1526 provides:
In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services.
In the present case, there is no sufficient proof as to the value of the property; however, such is immaterial in this case. If the donation is subject to the rules governing donations, then it may be revoked under La.Civ. Code art. 1559 for “non-performance of the condition imposed on the do-nee.” On the other hand, if it is governed by the law of onerous contracts, it may be *981 dissolved for non-performance of its conditions or failure of consideration under La. Civ. Code art. 1897.
We therefore conclude that the transaction may be dissolved based on the non-performance of the onerous conditions imposed upon defendants to care for plaintiffs for the rest of his life.
INTERMEDDLER
Defendants’ final contention is that the trial court erred in finding them to be in-termeddlers. Frank testified that plaintiff requested that he withdraw $27,300 from an account that was listed in both of their names. Frank did so and deposited $2,000 in an account in the name of plaintiff to pay some of plaintiffs bills. Frank also deposited $5,225.57 in his personal account to pay a personal loan. Frank testified that he gave the remaining money, approximately $20,000 in cash, to plaintiff on the day he was interdicted. No one knows what became of the money after it was allegedly given to plaintiff.
Louisiana Civil Code art. 3315 provides that there is a legal mortgage on the property of persons, who without having been appointed curators of interdicted persons, interfere in the administration of their property, beginning from the day on which the first act of interference was done. In the instant case, Frank withdrew the $27,300 on May 28, 1982.
The trial court held that the dealing between Frank and plaintiff constituted an interference in the affairs of a person known to be an interdict. We agree. The trial court ordered that defendants pay the $27,300 to plaintiff. However, the amount of the award should be $25,300 since the record reveals that $2,000 of the amount withdrawn was placed in plaintiff’s bank account.
Therefore, for the foregoing reasons, we amend the judgment of the trial court awarding plaintiff $27,300 to $25,300. The judgment is affirmed in all other respects. Costs of this appeal are to be borne by defendants.
AMENDED IN PART AND AS AMENDED, AFFIRMED.

. References to the Civil Code in this opinion relate to its appearance prior to its revision by Acts 1984, No. 331, § 1.

. La.Civ. Code arts. 1523, 1524 and 1525 provide:
Art. 1523. Gratuitous, onerous and remunerative donations; definitions
There are three kinds of donations inter vivos:
The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
Art. 1524. Onerous donation
The onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee.
Art. 1525. Remunerative donation
The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift.