ALFORD, Judge.
This is an appeal from a judgment of the trial court in favor of defendant, Industrial Consultant Engineering Company, Inc. (ICE), which dismissed plaintiff’s redhibition suit and granted a deficiency judgment in favor of ICE.
On March 19, 1981, the plaintiff, Rebel Shrimpers, Inc. (Rebel), purchased an ice maker from ICE. Rebel executed a chattel mortgage and note on April 1, 1981, in the amount of $90,000, which represented the balance due on the ice maker. The ice maker was designed to produce 36 tons of ice per day; however, Mr. Robert Richter, a representative of ICE, assured Mr. Eustis Falgout, the owner of Rebel, that it was capable of producing 39 1/2 tons of ice per day. On March 31, 1982, Rebel filed suit against ICE in suit number 67,949 seeking to rescind the sale alleging that the ice maker contained redhibitory vices and defects. Rebel discontinued payments on the note, and ICE filed suit on June 9, 1982, in suit number 68,594 for executory process. The ice maker was seized and sold at a sheriff’s sale on December 22, 1982, being purchased by ICE for $57,500.
On February 25, 1983, Rebel filed its first supplemental and amending petition seeking, in the alternative to redhibition, a claim in quanti minoris and a claim against Mr. Richter for personal liability. On March 25, 1983, ICE filed a petition for deficiency judgment in suit number 68,594 was consolidated with the redhibition action (suit number 67,949) for trial.
After hearing all of the evidence, the trial court dismissed Rebel’s redhibition claim, denied any personal liability on the part of Mr. Richter and granted a deficiency judgment in favor of ICE. In its well written reasons for judgment, the trial court stated:
The Court finds that elements of installation, maintainence (sic) and operation which were to be carried out by Rebel Shrimpers, Inc. were in fact not properly carried out by it.
*435 Specifically, there was evidence before the Court that there are poor water and electrical supplies furnished to the general area wherein Rebel Shrimpers is located in that no efforts were made by Rebel Shrimpers to rectify these problems to produce a steady and sufficient flow of these necessary items to the machine in question.
It was further admitted by Mr. Falg-out that he personally added up to 1500 pounds of freon at one point, the cost of which he deducted from a payment made to I.C.E. Company, Inc., and that he maintained these high levels of freon in the unit. The testimony of Robert Richter indicated that such a load exceeded by two or three times the maximum amount required for proper operation and that excessive head pressure resulting from this could cause the machine to shut down. Evidence adduced indicated that this in fact happened on several occasions.
Apparently, the trial court was of the opinion that no defect was proved because of the improper maintenance and operation.
On appeal, Rebel contends that the trial court erred in not finding that redhibition applied and in granting the deficiency judgment. We note that the assignment of error relating to the deficiency judgment was not briefed and is therefore considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
In order to be successful in a suit for redhibition or quanti minoris, a plaintiff must prove that the thing contained a red-hibitory defect. Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir.1983). The ultimate question of the existence of a redhibi-tory defect is a question of fact for the trial court which must not be disturbed in the absence of manifest error or abuse of the wide discretion afforded it. Long v. Panther Airboat Corp., 453 So.2d 304 (La.App. 1st Cir.1984). We find no manifest error.
Rebel asserts that the ice maker would not produce the desired quantity of ice. Mr. Falgout testified that he had to stop the ice maker every three to five hours because it would freeze-up and stop producing ice.
The record reveals that it was necessary to have 15 pounds of water pressure to properly defrost the ice maker and prevent freeze-up. Mr. Richter testified that he checked the water pressure as it entered the machine some 12 feet above the ground and that it was 6 to 8 pounds at one time and around 18 pounds at another. Rebel asserts that it added a water pump to increase the pressure; however, Mr. Richter testified that Rebel also needed a reserve tank because of the large volume of water needed during the defrost cycle. He testified that he informed Mr. Falgout of this, but no reserve tank was added.
Mr. E.R. Broussard, the owner of a nearby ice company which utilizes two 40-ton ice makers, testified that he was not sure whether the city could furnish enough water and therefore had his own water well in addition to using a reserve tank. He testified that insufficient water pressure would cause an ice maker to freeze-up. Mr. Francis Voisin, who worked at the Rebel ice plant before it was purchased by Mr. Falg-out, testified that there were electricity surges and that water pressure would go down periodically which would cause the ice maker in use at the time to freeze-up.
Rebel also contends that it had problems with high head pressure in the ice maker due to an insufficient condenser. However, ICE introduced evidence to show that the high head pressure was caused by an excessive amount of freon in the system. Mr. Falgout testified that the ice maker had a capacity of 1500 pounds of freon and that he continually added freon to the system. However, Mr. Richter testified that the system only had a capacity of 500 pounds of freon. Mr. Richter and Mr. Broussard testified that an excessive amount of freon would cause high head pressure which would in turn affect ice production.
Mr. Richter testified that the filters on the ice maker should be changed at least every 8 to 9 months, and Mr. Falgout testi *436 fied that he had never changed the filters. The ice maker had been in operation for well over one year.
Although there was conflicting testimony at trial, the trial court apparently accepted the testimony of Mr. Richter and ICE’s witnesses to be the most credible. Since the trial court is given great discretion in this area, we will not disturb its reasonable evaluations of credibility and inferences of fact, even though other evaluations of credibility and inferences are as reasonable. Beychok v. Norton, 449 So.2d 32 (La.App. 1st Cir.1984). The trial court is in a better position to observe and evaluate witnesses than a reviewing court on the intermediate level, which at best can only study the written words of a cold record. Kikendall v. American Progressive Ins. Co., 457 So.2d 53 (La.App. 1st Cir.1984).
We have carefully examined each of Rebel’s 10 assignments of error, most of which attack factual findings of the trial court, and we find that the trial court was not clearly wrong in any of its findings of fact or in its holding which dismissed the suit in redhibition.
Therefore, for the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are to be borne by appellants, Rebel Shrimpers, Inc.
AFFIRMED.