486 So.2d 769 (1986)
Samuel G. DEGENERES and Mary Sue Barker Degeneres
v.
Norwin D. BURGESS, Jr., et als.
No. CA 84 1435.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
*770 Huntington B. Downer Jr., Waitz & Downer, Houma, for plaintiffs and appelleesSamuel G. Degeneres and Mary Lee Barker Degeneres.
Michael J. Scurto & Stephen M. LaRussa, Gaidry & LaRussa, Houma, for defendant and appellantLaRussa Enterprises, Inc.
Robert J. Prejeant, Watkins, Walker & Prejeant, Houma, for defendantsNorwin D. Burgess Jr., and Annie Child Burgess.
*771 Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment in favor of plaintiffs, Samuel G. Degeneres and Mary Sue Barker Degeneres against defendant builder, LaRussa Enterprises, Inc. (LaRussa), for defects in the construction of their home. The court also awarded plaintiffs interest from the date of judicial demand and cast LaRussa for all court costs.
In September of 1977, LaRussa contracted with Norwin D. Burgess, Jr. and Anne Child Burgess to build a new house for them on property owned by LaRussa. The house was to be built according to plans and specifications that LaRussa already had in his possession, subject to several modifications requested by the Burgesses. These modifications, for which the Burgesses agreed to pay, included additional square footage, the substitution of an atrium with glass and wood walls for the wet bar shown on the plans,[1] and the installation of operable French doors on the front of the house in place of the windows specified on the plans.
S.P. LaRussa, president of LaRussa, and LaRussa's subcontractors, none of whom had ever constructed an atrium, advised against building the atrium, especially in the location that the Burgesses had selected for aesthetic reasons, because they could foresee drainage problems. Additionally, they suggested that the French doors should be permanently sealed, and that the atrium should have metal flashing instead of exposed wood on the walls. However, they complied with the Burgesses' wishes and built the house according to the requested modifications. All decisions as to construction procedures and practices to be used to effect the changes were made by LaRussa. During construction, Mr. Burgess noted several problems with water leakage in the atrium and around the chimney to the fireplace,[2] and LaRussa agreed to correct them. The act of sale between the Burgesses and LaRussa was passed on June 8, 1978.
Approximately a month thereafter, the Burgesses moved to Texas and placed their house for sale. The plaintiffs signed a purchase agreement on April 6, 1979, making correction of mildew on the ceiling near the fireplace part of the agreement.[3] After signing the act of sale on April 27, 1979, but prior to moving in, the plaintiffs discovered serious leakage problems caused by rainwater in the living room near the French doors and in the atrium. Mr. Degeneres contacted Mr. LaRussa in early May and Mr. LaRussa sent a carpenter, Mr. Carl Naquin, to correct the problems on May 17, 1979. Mr. Naquin weatherstripped and caulked the French doors and the glass in the atrium. However, Mr. Naquin's efforts did not stop the water leakage, and Mr. Degeneres wrote to both Mr. LaRussa and Mr. Burgess on May 31, 1979, informing them of the continuing problem. Neither Mr. LaRussa or Mr. Burgess took any further action to correct the problems. Mr. Degeneres continued to contact Mr. LaRussa throughout the summer about the water leakage.
On June 6, 1980, the plaintiffs filed suit against the Burgesses as their prior vendors, LaRussa as the builder, and LaRussa Real Estate Agency, Inc. LaRussa and the Burgesses in turn filed third party demands against each other. After hearing testimony, the trial court found LaRussa solely liable, dismissed with prejudice the plaintiffs' suits against the Burgesses and LaRussa Real Estate and dismissed with prejudice LaRussa's third party demand *772 against the Burgesses alleging limitation of warranty.
LaRussa alleges that the trial court erred in finding that plaintiffs were entitled to a reduction in sale price and/or damages since they knew of the defects prior to purchase. LaRussa also contends that the house was built on a speculative basis, therefore the ten-year prescriptive period should not apply, and that the Burgesses had agreed to a limitation on LaRussa's implied warranty against structural defects.
The initial petition referred to the action as a suit in quanti-minoris and for damages. An action in quanti-minoris is governed by the Civil Code articles on redhibition, LSA-C.C. arts. 2520-2548. An action for damages occasioned by a contractor's faulty construction of a custom-built house is governed by Civil Code articles on building contracts, LSA-C.C. arts. 2756-2777. The prescriptive period for a quanti-minoris action is one year from date of sale, or discovery of the defect if the seller is in bad faith. LSA-C.C. arts. 2534, 2546. The prescriptive period to seek damages for defective construction under a building contract action is ten years. LSA-C.C. art. 3500. Additionally, to recover under quanti-minoris, the plaintiff must prove a lack of knowledge of non-apparent defects (LSA-C.C. arts. 2520-2522); whereas under the building contract articles, the plaintiff can recover for apparent, as well as non-apparent defects. Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La.App.2d Cir.1983), writ denied, 433 So.2d 164 (La.1983). Because we find that the instant action meets the requirements for a suit under a building contract, we need not address any questions about one year prescription or knowledge on the part of the Burgesses or the Degenereses.
Duhon v. Three Friends Homebuilders Corporation, 396 So.2d 559, 561 (La.App.3d Cir.1981) sets out the three major factors in determining if a contract is a contract of sale or a contract to build.
First, in a contract to build, the "buyer" has some control over the specifications of the object. Second, the negotiations in a contract to build take place before the object is constructed. Third, and perhaps most importantly, a building contract contemplates not only that one party will supply the materials, but also that that party will furnish his skill and labor in order to build the desired object.
It is readily apparent from the facts previously stated that the contract between the Burgesses and LaRussa met all three requirements listed above. The Burgesses required certain modifications and additions that were agreed upon prior to construction, and LaRussa agreed to supply both the labor and materials needed to build the house. The fact that the house was built upon land owned by LaRussa, and that the Burgesses did not actually purchase the property until after construction is of no import. An agreement for construction of a home upon land owned by the contractor, at a price based upon the original set of plans, with the future homeowner to make changes and be charged for them during the course of construction, must be treated as a building contract though the contractor subsequently transferred title by sale. Broussard v. Pierret, 215 So.2d 136 (La.App. 3d Cir.1968). Also, see Price, 426 So.2d at 399.
Since the home built by LaRussa for the Burgesses evidently meets the requirements for a building contract, and the plaintiffs filed suit against LaRussa well within the applicable ten-year prescriptive period, the issues before this court are (1) did the plaintiffs' vendors (Burgesses) orally waive their rights to recover damages for defective construction, (2) if not, can the plaintiffs assert their vendors' rights to prove defects in construction, and (3) if recoverable, was the award for damages excessive?
The contractor in a building contract "has an implied duty to perform in a workmanlike manner free from defects attributable to either faulty materials or poor workmanship. La.C.C. art. 2769." Cell-O-Mar, Inc. v. Gros, 479 So.2d 386, 391 (La. *773 App. 1st Cir.1985), writs denied, 481 So.2d 1332, 1333 (La.1986). If a contractor fails to meet this implied duty, he is liable in damages for the losses that ensue. LSA-C.C. art. 2769.
Under the codal articles pertaining to sales, implied warranties of fitness and against redhibitory defects can only be limited or waived by the clear and express agreement of both parties. LSA-C.C. art. 2503. Hob's Refrigeration & Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La. 1974). Therefore, a seller may not act on his part alone to modify the statutory warranty implied in all sales. Stevens v. Daigle & Hinson Rambler, Inc., 153 So.2d 511 (La.App. 1st Cir.1963).
The codal articles for building contracts contain no provision for limiting or waiving the implied warranties contained therein. However, it is not against Louisiana public policy for parties to contract to waive the warranties afforded under the building contract articles. Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517 (5th Cir.1981). Therefore, by analogy, the right to limit or waive statutory warranties afforded by LSA-C.C. art. 2503 can be extended to LSA-C.C. arts. 2762 and 2769.
Since a building contract need not be in writing, parol evidence is admissible to prove a subsequent verbal agreement, or to modify or even abrogate a written construction contract. LSA-C.C. arts. 2236, 2276. Great Southern Homes v. Holten, 460 So.2d 662 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1250 (La.1985).
The records show that LaRussa attempted to get the Burgesses to accept a written limitation of warranty which was confected after the atrium had been constructed. However, the waiver was never signed by either Mr. or Mrs. Burgess. Therefore, at trial, LaRussa attempted to show an oral waiver of warranty by testimony for Mr. LaRussa, Carolyn Alford, a sales representative for LaRussa Real Estate, and Danny Chauvin, a construction superintendent for LaRussa. The record shows that Mr. LaRussa and his personnel all felt that the atrium should not be warranted. Mr. LaRussa testified that he personally discussed the warranty on the atrium with Mr. Burgess once. When Mr. Burgess refused to agree to installation of metal flashing on the wall instead of wood during construction, Mr. LaRussa testified "we stated at that time we would not warrant it." Mr. Chauvin testified that he did not recall any direct discussions with Mr. Burgess in regard to the warranty on the atrium. Neither Mr. LaRussa nor Mr. Chauvin remembered any direct discussions with Mr. Burgess in regard to the warranty on the French doors. Generally, Ms. Alford stated that Mr. Burgess was informed that LaRussa would not warrant "the work" and that Mr. Burgess verbally agreed to a waiver of the warranty. She also advised that she gave Mr. Burgess a written limitation of warranty to sign.
Mr. Burgess testified that he was never told prior to construction by Mr. LaRussa or anyone representing LaRussa that there was no warranty on the French doors or the atrium. He admits insisting that the atrium be located in accordance with his wishes, and that one entire wall be exposed wood. He admitted knowing that Mr. LaRussa did not want to build the atrium, but claims the reason given to him was that LaRussa had never built one before. He contends that LaRussa's fear of problems were related to drainage and stemmed from the possible clogging of the drain in the center of the atrium, not from rainwater leaking into other parts of the house.
While Mr. Burgess acknowledged receipt of the written limitation of warranty, he testified that he refused to sign it. Mrs. Burgess was never questioned about the implied warranty.
It is well settled in Louisiana jurisprudence that findings of fact will not be disturbed upon appeal unless found to be manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trier of fact who actually hears and observes the witnesses give live testimony is in a better position to evaluate credibility *774 than an appellate court which can only study the written words of a cold record. Kikendall v. American Progressive Ins. Co., 457 So.2d 53 (La.App. 1st Cir.1984).
After hearing all the testimony, the trial court concluded, "The Court is convinced that neither Mr. or Mrs. Burgess ever waived warranty to any portion of the house." After a thorough review of the record, we are unable to conclude that the trial court's findings of fact based on its evaluation of the live testimony are clearly wrong.
In the instant case, the plaintiffs are seeking to assert the Burgesses' implied warranty rights against LaRussa. Under the redhibition article, LSA-C.C. art. 2503, purchasers are entitled to bring any action the seller could have brought against his vendor. By analogy, this right can be extended to subsequent purchasers under the building contract articles. In fact, the Louisiana Supreme Court has ruled that a purchaser of a home has a right of action against the builder for breach of any implied warranty in a building contract which the builder had with the purchaser's vendor. Aizpurua v. Crane Pool Company, Inc., 449 So.2d 471 (La. 1984). An implied warranty of materials and workmanship in a building contract is one to which a subsequent purchaser is subrogated. 449 So.2d at 472.
The plaintiffs in the instant case are clearly subsequent purchasers who can assert their sellers' (Burgesses) non-waived implied warranty against the builder for defective construction. Therefore, in order to recover damages, the plaintiffs need only prove that a defect exists and that the defect came about as a result of faulty workmanship or materials. Hebert v. McDaniel, 479 So.2d 1029 (La.App.3d Cir. 1985).
The record shows that rainwater extensively damaged the French doors, the carpet next to the French doors, spotted the ceilings of the rooms adjacent to the atrium and mildewed the ceiling next to the fireplace. Thus, the court found that "[t]here is no dispute that the atrium, French doors and fireplace leak and have caused considerable damage to the house." In addition, a plywood fascia board had delaminated. The record reveals that these defects have been present since the house was built by LaRussa, and LaRussa's attempts to correct or repair the problems have been ineffective.
As stated by this court in Cell-O-Mar, 479 So.2d at 391,
The contractor is liable for damages if it is shown that he did not possess the necessary skill, efficiency or knowledge, or did not exercise ordinary care in the performance of the work or in the selection of suitable materials and equipment. A contractor is not liable for the destruction, deterioration or defects of a thing he builds if the destruction, deterioration or defects resulted from plans and/or specifications furnished to him that he was obliged to follow. However, even though a contractor is required to follow plans and/or specifications furnished to him, he can still be liable for damages if the destruction, deterioration or defects were his fault and not related to the plans and/or specifications, or if he had a justifiable reason to believe that adherence to the plans and/or specifications would create a hazardous condition. [Citations omitted]
As noted previously, this was LaRussa's first attempt to construct an atrium. The record reveals that LaRussa did not attempt to contact anyone with prior experience in building atriums. LaRussa developed the construction plans and procedures based upon Mr. Burgess' verbal requirements as to location and finishing materials. Water leakage problems developed during construction around the fireplace, and several attempts were made to caulk the chimney area. The plaintiffs' expert, Ronnie Shaw, testified that the water leakage which developed in the atrium shortly after it was built was caused by faulty construction. In regard to the French doors, Mr. Shaw testified the door frames and sills were improperly constructed and *775 flashed, and the doors were improperly sealed and installed. Subsequent attempts to correct the leakage around the doors were unsuccessful. Therefore, the record adequately supports the trial court's finding "that the defects are the result of inadequate construction and installation by LaRussa Enterprises, Inc."
LaRussa contends that the $10,835.00 awarded to the plaintiffs is excessive, in view of the fact that testimony by LaRussa's expert showed repairs could be effected for approximately $1,600.00.
The appropriate measure of damages, as a result of the contractor's breach of implied warranty of good workmanship in a building contract, is what it would take to place the purchaser "in the position he deserved to be in when the building was completed." Hebert, 479 So.2d at 1034. If a building can be repaired, the recovery is generally the cost of repairs. Cell-O-Mar, 479 So.2d at 397.
"In determining damages, the trier of fact is accorded much discretion, especially where the facts of the case preclude a precise computation of damages." 479 So.2d at 397. Only when the record reveals a clear abuse of this discretion will an appellate court disturb the trial court's award. Reck v. Stevens, 373 So.2d 498 (La.1979).
In the instant case, since the record reveals that the house can be repaired, the appropriate award is the cost of repairs. At the time of trial, no repairs had been effected. The plaintiffs' expert testified that, as of August 6, 1981, he estimated that sixteen different items needed to be repaired or replaced for a total of $10,835. This estimate included replacing the French doors, repairing and reflashing the door sills, reflashing and silicone coating the chimney, repairing the structural members and the ceiling around the chimney and the atrium, repainting the ceilings in the affected rooms, reflashing the atrium and reworking the atrium in part, installing a flue on the fireplace vent pipe, repairing a valence by the garage, reroofing the house completely, replacing custom-made drapes on the French doors and recarpeting the living room. Conversely, defendant's expert testified that $1,604.00 would suffice to repair any damage.
The trial court is vested with the discretion to accept or reject expert testimony and unless found to be clearly wrong, the court's determination will not be disturbed on appeal. Bergeron v. Illinois Central Gulf Railroad Co., 402 So.2d 184 (La.App. 1st Cir.1981), writ denied, 404 So.2d 1260 (La.1981).
In the case before us, the trial judge accepted the testimony of the plaintiffs' expert in regard to all items of damage. There was considerable disagreement between the experts as to the extent of the repairs needed, especially as to whether the French doors, the drapes, the roof and the carpet needed to be replaced completely. However, there is sufficient evidence in the record for us to determine that the judge did not abuse his much discretion in awarding damages, with the exception of one item, the custom-made draperies.
The plaintiffs simply did not bear their burden of showing that the draperies needed replacing because they could not be cleaned. There was conflicting testimony as to the extent of damage to the draperies; the plaintiffs contended that the front, as well as the lining, of each drape was water stained, whereas LaRussa claimed that the lining was the only part having any damage. There was no testimony that the drapes could not be cleaned; no cleaning establishment was ever consulted to see if the drapes could be salvaged. For this reason, the court's award of $2,200.00 for the draperies is reduced to $150.00, the only estimate shown in the record as a possible cost of cleaning the drapes. Therefore, the total damages award is reduced to $8,785.00.
For the foregoing reasons, we affirm the judgment of the trial court awarding plaintiffs recovery against the defendant, LaRussa Enterprises, Inc. We amend the judgment amount to show a total award of $8,785.00. In all other respects, the judgment *776 is affirmed. Costs of this appeal are to be borne by LaRussa.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The atrium referred to herein is apparently an open courtyard area where the roof is omitted so that rain can fall directly on plants contained therein. There is no concrete slab in the atrium and a drain is installed in the center of the area so that there is no standing water.
[2] The fireplace and chimney were constructed according to the original plans and specifications; they were not part of the changes.
[3] Testimony showed that the ceiling had been painted before the plaintiffs and the Burgesses signed the act of sale.