CRAIN, Judge.
Barry W. Miller contracted to have a brick patio and two brick walkways constructed at his residence. After construction was completed Miller observed loose bricks, buckling in several places, and poor drainage. Miller also complained of poor workmanship and of the aesthetically unattractive appearance of the patio and walkways. Miller instituted this action for damages against Daniel Thompson, a landscape contractor and the owner of Southern Heritage Landscape Company (Southern); and *97 Paul Monroe and Chad Monroe, Southern employees who performed manual labor and assisted Thompson at the site. The trial court granted a motion for involuntary dismissal in favor of defendants Paul and Chad Monroe. After trial on the merits, judgment was rendered in favor of Miller against Thompson in the sum of $2,017 plus interest and costs. From this judgment Miller appeals alleging as error: (1) quantum, (2) the trial court’s failure to award nonpecuniary damages, and (3) the dismissal of Paul and Chad Monroe. Thompson answered the appeal and alleges as error the rendition of judgment against Thompson personally rather than against Southern Heritage.
DAMAGES
Miller contends that the $2017 awarded by the trial court is inadequate because it represents “hard costs” only, not a sum for which he could have the defective brickwork repaired by a landscape or masonry contractor.
David R. Yey, a landscape architect who testified on behalf of defendants, was accepted by the court as an expert in the fields of landscape architecture and landscape contracting. Vey testified that the dry-mix method used by Thompson, as opposed to the mortar method, was used by at least one-half of the local landscape contractors. He further stated that the loose bricks could be repaired; the workmanship on the back walkway was marginal; that of the front walkway was average; that of the patio was below standard; the pattern design was poor, which was akin to a person wearing a suit composed of three different plaids; and that the poor design tended to make the workmanship appear poorer than it was. He estimated the cost to take up the brick and redo the walks and patio, including mortar, sand and labor, at $2,035-$2,400. These were “hard costs” or contractor’s costs to which the contractor must add 50% for profit, insurance, and overhead. Vey stated that his standard fee was “hard costs” plus at least 50%.
Thomas J. Thibodeaux, accepted by the court as an expert in masonry work, testified on behalf of plaintiff that the patio and walkways were constructed in an unwork-manlike manner. He stated that the joints were not straight, the bricks were not level, the concrete had not been mixed properly, thus causing loosening of the bricks. He recommended taking up, cleaning and redoing the brickwork rather than attempting to repair the bricks in a piecemeal approach. He estimated the repair to be approximately $7.00 per square foot.
Ernest Behrens, stipulated expert in bricklaying and masonry, testified on behalf of plaintiff. He stated that the joints were not straight, the bricks were not level, and they were laid without adequate slope to ensure proper drainage. He noted that the cement mixture was poor and thus would deteriorate quickly. In his opinion the patio and walkways would best be repaired by taking up all of the brick, retaining the slab and relaying the brick on the concrete slab. His repair estimate was similar to that of Vey, however, after adding insurance, profit and his labor, the cost would be $6.00 to $7.00 per square foot.
In oral reasons for judgment the trial court found the brickwork to be defective. The damages awarded were based on Vey’s estimate of “hard costs” only, taking “into account that the entire original work need not necessarily be replaced or repaired and the Court being of the opinion that it would be impractical to make an accurate determination of what among the 750 square feet might actually need to be replaced.”
The appropriate measure of damages resulting from the contractor’s breach of the implied warranty of good workmanship is generally the cost of repairs when the thing can be repaired. La.C.C. art. 2762 and 2769; Degeneres v. Burgess, 486 So.2d 769 (La.App. 1st Cir.1986). The discretion of the trier of fact in determining damages shall not be set aside absent an abuse of discretion. Id. at 775.
Vey, who testified on behalf of defendant, stated that he would never accept a job of this type for “hard costs”. Thibodaux and Behrnes testified similarly. It is apparent that Miller would be unable to *98 have the defective brickwork repaired for the “hard costs” awarded by the trial court. After careful review of the record we conclude that Miller would have to pay at least fifty percent more than the amount awarded by the trial court to have the brickwork repaired. We amend the judgment of the trial court to award this amount.
NONPECUNIARY DAMAGES
Miller contends that the trial court erred in failing to award nonpecuniary damages for the defective workmanship. He states that the patio and walkways were constructed in brick in order to be aesthetically pleasing. Thus the poor workmanship and unsightly condition of the brickwork caused mental anguish to plaintiff.
Miller testified that the patio was to be used for entertainment of business and social guests, for his children to play, and to improve the aesthetic appearance of the house. In oral reasons for judgment the trial court stated, “[T]he Court notes that the plaintiff failed to convince the Court that nonpecuniary damages were suffered due to the weight of the evidence indicating that the work was for utility rather than aesthetic purposes.”
Under former La.C.C. art. 1934 (as it appeared prior to its amendment and reenactment by 1984 La. Acts, No. 331, § 1, effective January 1, 1985),[1] nonpecuni-ary loss is recoverable when the object of the contract is the gratification of intellectual enjoyment. This has been incorporad ed in the present article 1998. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986). The trial court’s determination that the object of the contract between Miller and Thompson was to fulfill a utilitarian purpose rather than to gratify a nonpecuniary interest should not be set aside unless manifestly erroneous. See Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3d Cir.), writs denied, 515 So.2d 1107, 1108 (La.1987). After careful review of the record we find no manifest error in the trial court’s determination.
DISMISSAL OF PAUL MONROE AND CHAD MONROE
Miller contends that the trial court erroneously granted the motion for involuntary dismissal in favor of Paul Monroe and Chad Monroe.
A motion for involuntary dismissal should be granted when plaintiff has presented all evidence, and the trial court weighs and evaluates the evidence and determines that plaintiff has not proved his case by a preponderance of the evidence. La.C.C.P. art. 1672; Financial Corporation v. Estate of Cooley, 447 So.2d 594 (La.App. 3d Cir.1984).
Although no reasons were assigned, the trial court obviously found that plaintiff had not proved by a preponderance of evidence that Paul and Chad Monroe breached an obligation owed to plaintiff, other than the general obligation implied in building contracts to perform their tasks in a workmanlike manner. See Pickels v. Brown, 431 So.2d 880 (La.App. 2d Cir.1983). Factual findings of a trier of fact should not be disturbed unless clearly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After careful review of the record we find no manifest error therein.
PERSONAL LIABILITY OF THOMPSON
Thompson contends that Miller contracted with Southern Heritage Landscape Company (Southern), not with Thompson personally. As evidence of Miller’s contract with Southern, Thompson presented the following evidence: the materials furnished for the construction were billed to Southern and paid for through Southern; a Southern advertising sign was displayed on Miller's front lawn; and Miller knew of the existence of Southern as an entity because Miller had previously represented Southern.
*99 Miller testified that at all times he assumed that he was dealing with Thompson personally; he was aware that Southern was not in sound financial condition and thus would not have contracted with Southern.
The trial court had the opportunity to observe the live testimony of the witnesses and assess their credibility and obviously determined that Miller contracted with Thompson personally, thus holding Thompson liable. Factual findings of the trial court should not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d at 1333. After careful review of the record we conclude this finding is not clearly wrong. Accordingly, the judgment of the trial court is amended in part and as amended affirmed. Costs of this appeal are assessed against appellees.
AMENDED AND AFFIRMED.

. The subject matter of former La.C.C. art. 1934 has been incorporated in La.C.C. art. 1998. However, former La.C.C. art. 1934 applies to the present case since the contract was confected and the alleged breach took place in 1984, prior to the effective date of the revision.