HANS J. LILJEBERG JUDGE
|,In this breach of contract case arising from the repair of a motor vehicle after a collision, defendant appeals the trial court’s judgment rendered in favor of plaintiff. For the following reasons, we reverse and vacate the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
In March of 2008, plaintiff, Dean Stipp, purchased a 2008 Mercedes Benz SL550 (“the SL550”) from defendant, Benson Motor Company d/b/a Mercedes Benz of New Orleans (“Benson”), for approximately $91,000. Several months later, on November 9, 2008, Mr. Stipp was involved in a high impact collision with another vehicle, causing substantial damage to the SL550. On November 13, 2008, the SL550 was towed to Benson for repairs.
Although Mr. Stipp’s insurer, Metropolitan Property and Casualty ' Insurance Company (“Metropolitan”), prepared a repair estimate after the collision, Benson discovered additional damage during the repair process. On March 2, 2009, Benson requested a supplemental from Metropolitan to complete the repairs, and Metropolitan subsequently approved the request. On June 30, 2009, Benson notified Mr. Stipp that the repairs were complete.
In July of 2009, when Mr. Stipp went to Benson to pick up his vehicle, he noticed some scratches on the body of the car and a scratch on the navigation screen located on the dashboard. Mr. Stipp left the SL550 at Benson for them to repair the scratches. Benson requested a second supplement from Mr. Stipp’s insurer in order to repair the navigation screen. On August 20, 2009, Benson informed Mr. Stipp that the vehicle was ready, and he picked it up on August 26, 2009. The total cost of the repairs for 'the SL550 was approximately $36,000.
|2On November 6, 2009, Mr. Stipp filed this lawsuit against Benson[1] alleging breach of contract to repair and breach of duty of good faith.[2] In his petition, Mr. Stipp asserted that Benson failed to repair the SL550 within a reasonable time and failed to repair it to his satisfaction or to its pre-accident condition. He alleged that in addition to the diminished value of the car due to its defective condition, he also sustained damages due to the repair delay. Mr. Stipp asserted that the damages due to the repair delay included the insurance premiums and car notes he paid while the car was being repaired and was unusable, as well as damages for inconvenience and loss of enjoyment of the vehicle.
On November 18, 2009, after filing this lawsuit, Mr. Stipp had the SL550 towed to Benson with complaints regarding the finish on the passenger door, operation of the convertible top, warning lights on the dashboard, and the vehicle’s electrical system. Benson repaired the finish on the passenger door, replaced the starter bat *1185 tery,[3] found the car to be fully operational, and notified Mr. Stipp that the vehicle was ready on November 19, 2009. He picked up the SL550 on December 11, 2009.
In connection with this litigation, Mr. Stipp was deposed on February 15, 2011. In his deposition, Mr. Stipp testified that he believes the SL550 cannot be fixed and will never be the same as it was before the accident. He stated that it drives a little different and does not feel the same, the top creaks, and the trunk does not close properly. After this deposition, the SL550 was towed to Benson on July 6, 2011, for an inspection and to allow Benson to make any appropriate repairs. During the inspection, Benson replaced the system battery and the |3hydraulic pump that operates the roll bar for the convertible top. Benson also found that the trunk did not close properly, as alleged by Mr. Stipp, because the owner’s manual was in the trunk in a position that prevented it from closing properly. The SL550 was towed back to Mr. Stipp on August 2, 2011.
According to Mr. Stipp, he continued to experience problems with the SL550. Approximately three years after Benson last inspected the vehicle, Mr. Stipp had the SL550 inspected by an automobile mechanic, Ryan Sterling, in August of 2014. Mr. Stipp gave Mr. Sterling a list of problems he was experiencing and asked him to inspect and confirm them, but not to fix them.
On August 29, 2016, a bench trial was held in this matter. At trial, Dean Stipp testified that he purchased the SL550 as a pleasure vehicle to be used on “nice days.” He did not intend to use this vehicle for everyday driving. Mr. Stipp testified regarding the problems he experienced with the SL550 after the collision and subsequent repairs by Benson. He stated that the car and the brakes felt different after the repairs and the roll bar for the convertible top had problems. He also testified regarding battery issues, stating that the battery would be drained if the car sat for two weeks or so without being driven, and warning lights would come on the dashboard. Mr. Stipp testified that prior to the accident, he was able to leave the car without driving it for a month and the battery would still work properly. He stated that he contacted Benson about - the battery problem and was told to drive the car around the block every two weeks.
According to Mr. Stipp, while the car was at Benson for repairs, he knew he had rental insurance but he did not ask for a rental car because he had another vehicle to use. He also testified that he contacted John Stemke, the body shop manager at Benson, about once a month to check on the repair status and Mr. Stemke would typically say the repairs were delayed because they found more “twisted stuff.” Mr. Stipp testified that he did not consider selling or trading the |4SL550 to Benson; he just wanted the vehicle fixed. At trial, he did not recall receiving a letter in 2012 from Benson indicating that Benson was willing to purchase the car from him or arrange a trade-in. He testified that he may have known that Benson was willing to buy the car back from him, but he did not recall.
Mr. Stipp testified at trial that he did not recall Mr. Stemke saying that he did not know how long the repairs would take when the SL550 was initially taken to Benson for repairs. However, he admitted that in his deposition, he testified that Mr. Stemke indicated that he did not know how long the repairs would take.
*1186 Ryan Sterling was accepted by the trial court as an expert in automotive maintenance, repair, and claims dealing with insurance companies. Mr. Sterling testified that he inspected, .the SL550 in August of 2014 at Mr. Stipp’s request. When the vehicle arrived for the inspection, the batteries had to be charged before Mr. Sterling could evaluate Mr. Stipp’s complaints. Mr. Sterling confirmed that the windows were not operating properly and the roll bar for the convertible top was not operating properly. He stated that he did not test drive the vehicle due to safety concerns, because the brake pedal “sank to 'the floor,” indicating that the braking system was not working properly. He also stated that one side of .-the trunk had a greater gap than the, other. .Mr. Sterling testified that he did not determine the cause of any of the vehicle’s problems.
Mr. Sterling admitted that he did not know some preliminary information about the car, such as whether it was frequently used or whether it went for long periods of time without use. He was aware that .the vehicle was returned to Mr. Stipp in August of 2009, after the initial repairs by Benson, and that he had examined it five years after the repairs were performed. Mr. Sterling could not say that Benson did anything wrong, what caused the vehicle’s problems, or how long the problems existed.
| .^Regarding the timeliness of Benson’s repairs, Mr. Sterling testified that it was “irresponsible” for the repairs to have taken nine months to complete. He stated that it was unreasonable for Benson to have taken until March of 2009 to request the first insurance supplement, but after the additional parts were ordered and came in, he did not think it was unreasonable for the repairs to be completed in June of 2009. When Mr. Stipp came to pick up the SL550 after the repairs were initially completed in June of 2009, he found additional scratches. As a result, Benson had to request a second insurance supplement and the repairs were completed in August of 2009. Mr. Sterling admitted that he has personally had a repair job that took nine months to complete. Mr. Sterling did not-testify as to what he believes would have been treasonable time to repair the SL550 based on the extensive .damage it sustained in the collision.
Finally, Mr.' Sterling testified regarding the valué of the SL550. He stated that 'he is knowledgeable about a car’s depreciation over time' and how ah" accident can affect its value. Mr. Sterling testified that when the accident" occurred, the SL55Ó was worth approximately $70,000. He further stated that the value of a vehicle in such a collision would be affected by at least fifty percent. Thus, he opined that the SL550’s resale value likely dropped by approximately $36,000 after this accident, which is roughly the cost of the repair.
The defense called John Stemke, the body shop manager at Benson, who was accepted as an expert in body shop operations, management, and repair. Mr. Stemke testified that .on November 13, 2008, the day. Benson received the SL550 for repairs, he spoke on the phone to Mr. Stipp and discussed the repairs. He stated that he informed Mr. Stipp that the body shop had a heavy workload at that time and would not be able to start the repairs on his vehicle right away. Mr.- Stemke asserted that he told Mr. Stipp the repairs would take several months and that he |fiwas unable to give an estimated completion date due to the complexity of the repairs.
Mr. Stemke testified about the timeline of the repairs. He stated that the adjust *1187 er’s estimate was prepared before Benson received the vehicle. Parts were ordered, and they were received on December 8, 2008. Mr. Stemke testified that after the parts came in, a technician would have been assigned to the vehicle once a technician became available. He was not sure if the work on the SL550 began in December of 2008 or early 2009. Mr. Stemke stated that once the car was “torn down,” additional damage was found, so Benson requested an insurance supplement in March of 2009. Once the supplement was approved, additional parts were ordered and received, and they completed the repairs on June 30, 2009. However, when Mr. Stipp came to get the car and noticed some scratches on the vehicle and a light scratch on the navigation screen, Benson had to request a second supplement, resulting in further' delay. After these additional repairs, Mr, Stipp picked up the SL550 bn August 26, 2009.
When the vehicle was returned to Benson in November of 2009, Mr. Stemke inspected it, started the engine, and saw that the dashboard indicated the “consumer functions” were turned off due to low voltage of the system battery. Mr. Stemke testified that after the vehicle idled for 15 to 20 minutes, the windows and convertible top operated properly. He testified that after the battery was charged, every button in the car worked and everything Mr. Stipp complained of worked properly. Mr, Stemke drove the car approximately six to eight blocks and had no problem with the function of the brakes. Benson did find that the starter battery needed to be replaced and replaced it during this visit. Mr. Stemke stated that Mr. Stipp was informed the car was ready on November 19, 2009, but he did not pick it up until December 11,2009,
|7When the SL550 was returned to Benson on July 6, 2011, Mr, Stemke and the shop foreman, Stephen Edwards, inspected it. They found that the trunk did not close properly due to the placement of the owner’s manual in the trunk where it blocked the proper operation of the trunk lid. Once the owner’s manual was removed, the trunk worked properly. They also noticed there was some “jumpiness” where the'roll bar hydraulically lifts and retracts. Mr. Stemke stated that Benson replaced the hydraulic pump, which was under warranty, but this had nothing to do with the collision or the resultant repairs. He testified that everything was functioning as designed when the vehicle was returned to Mr. Stipp on August 2, 2011.
Stephen Edwards was accepted as an expert in Mercedes Benz service and repair. He drove and inspected the SL550 in July of 2011, Mr. Edwards explained that the SL550 has two batteries—the starter battery and the system battery. The starter battery’s primary function is to start the vehicle. Its secondary function is to provide backup for the system battery in the event of an emergency power failure. The system battery powers the windows, air conditioning, lighting, and other electronics. Mr. Edwards explained that the system battery also powers the brakes, and that if the system battery was not working properly, the brakes would operate and feel differently, including causing the brake pedal to “travel really far.” He noted that the owner’s manual indicates that the brakes require an electrical panel to function correctly. In July of 2011, Benson replaced the system battery due to low voltage issues. According to Mr. Edwards, it was not “out of the norm” for a 2008 vehicle to need a new system battery in 2011.
Mr. Edwards drove the SL550 for approximately ten miles, ,did not have any *1188 problems, and found that the brakes worked properly. He also checked all of the vehicle’s systems and found that the roll bar would “vibrate and chatter” as it was |sraised. He replaced the hydraulic unit for the convertible top, which solved the problem.
Mr. Edwards testified that Mr. Stipp’s complaints to Mr. Sterling in 2014 regarding the brake pedal and the window and convertible top operations could have been caused by a low voltage problem with the system battery. He stated that the system battery must be properly charged or there is a risk of its depletion and ultimate demise. Mr. Edwards asserted that it is not good for a battery to sit idle for long periods of time; rather, these cars must be driven regularly or kept on a battery maintenance charger. Mr. Edwards further testified that it was unlikely that something related to the repairs performed after the collision would have caused the brake pedal to go to the floor, as described by Mr. Sterling. He believes that such a problem or hydraulic failure would have manifested itself much sooner after the repairs were completed.
At the conclusion of trial, the trial judge took the matter under advisement. Thereafter, on September 23, 2016, the trial judge rendered a judgment in favor of Mr. Stipp and against Benson in the amount of $50,000, plus interest, costs, and attorney fees. Benson appeals this judgment and denies any liability in this matter. Mr. Stipp has answered the appeal, seeking an increase in the amount of damages awarded.
LAW AND DISCUSSION
On appeal, in Benson’s first assignment of error, it argues that the trial court erred by accepting Ryan Sterling as an expert witness. It asserts that Mr. Sterling has no expertise in the inspection or repair of Mercedes Benz automobiles and did not even inspect the SL550 until five years after the repairs were completed. Benson argues that Mr. Sterling’s testimony was not relevant or reliable because he did not examine the vehicle within a reasonable time after the repairs were completed in August of 2009. Further, Benson notes that Mr. Sterling could not 19say that Benson did anything wrong or caused the problems complained of by Mr. Stipp in 2014.
Mr. Stipp responds that the trial court’s acceptance of Mr. Sterling’s expert testimony was not an abuse of discretion. He notes that Benson fully cross-examined Mr. Sterling regarding his qualifications and opinions in this matter. Mr. Stipp contends that any issue as to the timing of his inspection of the SL550 goes to the weight of the evidence, not its admissibility.
La. C.E. art. 702 governs the admissibility of expert testimony in Louisiana, providing as follows:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
1) The expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue:
2) The testimony is based on sufficient facts or data;
3) The testimony is the product of reliable principles and methods; and
4) The expert has reliably applied the principles and methods to the facts of the case.
A trial court’s decision to qualify an expert cannot be overturned on appeal *1189 unless the trial court abused its discretion. Cheairs v. State ex rel. Department of Transportation and Development, 03-680 (La. 12/3/03), 861 So.2d 536, 541. In considering expert testimony, a trial court may accept or reject, in whole or in part, the opinion expressed by an expert. Phillip Family L.L.C. v. Bayou Fleet Partnership, 12-565 (La. App. 5 Cir. 2/21/13), 110 So.3d 1158, 1167-68, writ denied, 13-0641 (La. 4/26/13), 112 So.3d 846; Allensworth v. Grand Isle Shipyard, Inc., 15-257 (La. App. 5 Cir. 10/28/15), 178 So.3d 191, 196. The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. Phillip Family, L.L.C., 110 So.3d at 1167.
| inAt trial, Mr. Sterling testified that he has worked as an auto mechanic for approximately 30 years and had previously been qualified as an expert in court four times. He stated that he also has experience working oh Mercedes Benz vehicles and has had some training on Mercedes Benz vehicles, though he has not been trained specifically on the SL550 model. The trial court accepted him as an expert in automotive maintenance, repair, and claims dealing with insurance companies, not specifically in Mercedes Benz service or repair.
Mr. Sterling clearly has extensive experience in automotive maintenance and repair, as well as claims dealing with insurance companies, and we find that he was qualified to testify as an expert in those fields. Mr. Sterling inspected the SL550 and his automotive expertise could have assisted the trial judge in understanding the evidence. Accordingly, considering Mr. Sterling’s qualifications and experience, we cannot say that the trial court abused its discretion by accepting Mr. Sterling as an expert witness and allowing him to testify as such at trial. This assignment of error is without merit.
In its second assignment of error, Benson asserts that the trial judge erred by finding it liable for breach of contract. It argues that Mr. Stipp had the burden to prove, how Benson breached its obligation to perform the repairs in a workmanlike manner, but he failed to point to any want of skill, efficiency, knowledge, or lack of ordinary care in the performance of the repairs. Benson notes that even Mr. Stipp’s expert, Mr. Sterling, testified that he did not determine what caused the deficiencies complained of, and he could not point to anything Benson did wrong. Benson further argues that although Mr. Sterling testified that taking nine months to repair the SL550 was “irresponsible,” he did not indicate what a reasonable time would have been under the circumstances. Thus, he did not prove the repairs were not completed in a reasonable time.
| nIn order to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the évidence: 1) defendant owned him an obligation; 2) defendant failed to perform the obligation; and 3) defendant’s failure to perform resulted in damage to the plaintiff. Hayes Fund for the First United Methodist Church of Welsh, L.L.C. v. Kerr-McGee Rocky Mt., L.L.C., 14-2592 (La. 12/8/15), 193 So.3d 1110, 1115; Mouton v. Generac Power Sys., 14-350 (La. App. 3 Cir. 11/5/14), 152 So.3d 985, 997. A contract for work or services carries an implied obligation on the contractor to perform in a workmanlike manner, in default of which he must respond in damages for the losses that may ensue. La. C.C. arts. 1994, 2769; Platt v. Interstate Dodge, 37,059 (La. App. 2 Cir. 4/9/03), 843 So.2d 1178. A party claiming that repairs are defective or un *1190 satisfactory bears the burden of proving by a preponderance of the evidence that the work was defective. See K&F Refrigeration v. Bowman, 41,098 (La. App. 2 Cir. 5/17/06), 930 So.2d 1141, 1145-1146. Proof of failure to perform contract in a workmanlike manner requires some showing of a want of skill, efficiency, knowledge, or lack of ordinary care in the performance of the work. Professional Constr. Services, Inc. v. Lee Marcello Contractor, Inc., 550 So.2d 968, 971 (La. App. 5 Cir. 1989), writ denied, 556 So.2d 36 (La. 1990).
In the present case,' based on the record before us, we find no reasonable basis for an assignment of liability to Benson. It was Mr. Stipp’s burden to prove that Benson breached its obligation to perform the vehicle repairs in a workmanlike manner, and he failed to meet this burden.
The record before us does not show that Benson failed to perform the repairs on the SL550 in a workmanlike manner or that it was possible for the vehicle to have been repaired to .its pre-accident condition. At trial, Mr. Stipp -testified that when he got the SL550 back, from Benson in August of 2009, the car felt different. He complained that the brakes did not feel the same and the battery would drain if [ 12the vehicle was left without being driven for two weeks or so. In November of 2009, Mr. Stipp complained about the operation of the convertible top, warning- lights on the dashboard, and problems with the electrical system. Benson replaced the starter battery at that time. Thereafter, in July of 2011, Mr. Stipp set forth several complaints, including that the convenible top creaked, the trunk did not close properly, and battery issues. As a result, Benson replaced the system battery, discovered that the owner’s manual was preventing the trunk from properly closing, and replaced the hydraulic pump for the roll bar. Mr. Edwards testified that everything worked properly when the vehicle was returned to Mr. Stipp.
Mr. Stipp’s expert, Mr. Sterling, did not inspect the SL550 until 2014. While he confirmed Mr. Stipp’s complaints regarding the operation of the windows and convertible top, as -well as brake issues, he did not determine the cause of any of the vehicle’s problems. Mr. Stipp had complained that the brakes felt different after the repairs, but the testimony and evidence did not show that the brake issue noted by Mr. Sterling was present after Benson’s initial repairs or caused by the repairs. Mr. Edwards testified that it was unlikely that anything related to the repairs caused the brake pedal to “go to the floor,” as described by Mr. Sterling, because the problem or hydraulic failure would have manifested itself much sooner after the repairs were completed. Further, Mr. Edwards stated that the system battery is involved in powering the brakes and the brakes can feel different if the system battery is not working properly.
The testimony revealed that some of the problems with the SL550 were related to battery issues. Mr. Stipp admitted that he did not use the SL550 for everyday driving, and he had problems with the battery draining if he did not use the car for two weeks, or so. Mr. Edwards testified that Mr. Stipp’s complaints, to Mr. Sterling in 2014 could have been caused -by a low voltage problem with the system battery. He further stated, that the car should be driven regularly or kept on | iaa battery maintenance charger, or there is a risk that the battery could be depleted. The evidence did not show that the battery or electrical issues were caused by any substandard repairs performed by *1191 Benson after the accident. It is also noted that Benson replaced the starter battery in November of 2009 and the system battery in July of 2011.
Although Mr. Stipp complained about problems with various functions of the SL550 after the initial repairs were made, the testimony and evidence did not establish that the repairs were not performed in a workmanlike manner or were substandard. Mr. Stemke and Mr, Edwards testified that everything on the SL550 worked properly when it was returned to Mr. Stipp in July of 2011. It was not until three years later that Mr. Sterling inspected the vehicle at Mr. Stipp’s request. Although he confirmed some of the problems complained of, even Mr. Sterling could not say what caused these problems. In fact, Mr. Sterling testified that he could not say that Benson did anything wrong.
Based on the testimony and evidence presented, we find that' the trial court erred by finding that Mr. Stipp met his burden of proving that Benson breached its obligation to repair thé SL550 in a workmanlike manner.
With regard to Mr.’ Stipp’s claim" that Benson failed to repair the SL550 within a reasonable time, we also find that Mr. Stipp did not meet his burden of proof. The record does not show that the parties agreed the repairs would take a particular amount of time. According to Mr. Stemke,-he informed Mr. .Stipp that Benson had a heavy workload when the SL550 arrived, that the repairs could not be started right away, and that he did not know when the repairs would be completed. Although Mr. Stipp testified at trial that he did not recall Mr. Stemke saying he did not know how long the repairs would, take, he did not testify that Mr. Stemke agreed for the repairs to be completed at any particular time.
114Where no time for the performance is specified, the inference will be supplied that the parties intended for the obligation to be undertaken within a reasonable time. Pelican Electrical Contractors v. Neumeyer, 419 So.2d 1 (La. App. 4 Cir. 1982), writ denied, 423 So.2d 1150 (La. 1982). What constitutes a reasonable time must be determined by the circumstances of each case. Id.
The record does not establish what a reasonable time would have been for these repairs under the circumstances presented in this case. The testimony revealed that there was substantial damage to the SL550 when it arrived at Benson in November of 2008. As the car was “torn down,” additional damage was discovered and Benson had to request a supplement from Mr. Stipp’s insurer and order additional parts. Once these parts were received, the repair work was completed on June 30, 2009. When Mr. Stipp came to Benson to get the car, he noticed some scratches on the vehicle and the navigation screen. Benson had to request an additional supplement to repair the navigation screen. Mr. Stipp picked up the SL550 on August 26, 2009.
Because the record does not establish what a reasonable time, for repairs would have been under the particular circumstances of this case, we cannot say that Benson failed to repair the SL550 within a reasonable amount of time.
Based on our finding that Mr. Stipp did not prove Benson, failed to make the repairs in a workmanlike manner or that the repairs were not completed within a reasonable time, we find that the trial court was clearly wrong in finding that Benson was liable to Mr. Stipp for damages. Ac *1192 cordingly, we reverse this finding of the trial court and vacate the trial court’s judgment ordering Benson to pay $50,000 plus costs, interest, and attorney fees to Mr. Stipp.
Considering our finding that Benson has no liability in this case, we need not address Benson’s remaining two assignments of error, in which it challenges the amount of damages awarded and the award of attorney fees. Likewise, based on |1Bour decision to reverse and vacate the award of damages, we find no merit in Mr. Stipp’s answer to the appeal, in which he requests an increase in the damages awarded.
DECREE
For the foregoing reasons, we reverse the trial court’s finding that Benson is liable to Mr. Stipp for breach of contract. We further vacate the trial court’s judgment awarding $50,000 plus costs, interest, and attorney fees to Mr. Stipp.
REVERSED; JUDGMENT VACATED

. Mr. Stipp also filed suit against his insurer, Metropolitan, alleging that his policy provided coverage for the actual replacement value of the vehicle and that Metropolitan had breached the insurance contract by failing to ''total'' the SL550 and pay the actual cash replacement value. The trial court dismissed Metropolitan from this case via summary judgment, and this Court affirmed the trial court’s ruling. See Stipp v. MetLife Home and Auto Ins. Agency, Inc., 13-507 (La. App 5 Cir. 12/19/13), 131 So.3d 455.

. In his petition, Mr. Stipp also set forth claims against Benson for redhibition and/or breach of warranty and unjust enrichment. However, these claims were later dismissed by the trial court after Benson filed exceptions of no cause of action.

. The SL550 is equipped with two batteries— the starter battery and the system battery.