GUIDRY, J.
Defendant, Kenworth of South Louisiana, L.L.C. (Kenworth), appeals from a judgment of the trial court awarding plaintiff, Workbox, L.L.C. (Workbox) $49,453.33 *1039 in damages. For the reasons that follow, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
On August 24, 2007, Workbox purchased a 2006 Kenworth T800 series truck equipped with a 8.9L Cummins Turbo Diesel engine. Workbox designated this truck as "truck # 103," and it was immediately placed into service by Workbox as part of its fleet of delivery trucks.
Thereafter, on June 23, 2011, Workbox brought truck # 103 to Kenworth's service center in Port Allen, Louisiana because the engine was consuming large amounts of oil and was running hot. At the time truck # 103 was brought to Kenworth's Port Allen service center, the truck had 172, 176 miles on the engine. Kenworth inspected the engine and determined that the engine had internal damage and needed an overhaul. Workbox authorized the repairs, and Kenworth completed the repairs on June 28, 2011. Workbox paid Kenworth $15,942.59, plus applicable sales tax for the engine overhaul.
After the repairs were completed, Workbox placed truck # 103 back into service. Truck # 103 was subsequently returned to Kenworth's Port Allen service center several times after June 2011 for various issues and/or problems unrelated to the engine overhaul. However, on August 2, 2012, truck # 103 began leaking oil out of the exhaust and was taken out of service. Thereafter, on August 15, 2012, Workbox returned truck # 103 to Kenworth, where it was determined that it had suffered another engine failure and would require another complete engine overhaul. At the time truck # 103 was returned to Kenworth, it had only accumulated 46,868 miles since the last engine overhaul. Kenworth completed the repairs, for which Workbox paid $18,010.74, and truck # 103 was returned to service in October 2012.
Thereafter, on August 8, 2013, Workbox filed a petition for damages and for breach of contract, naming Kenworth and its insurer as defendants. Workbox asserted that Kenworth breached its obligation to perform the June 2011 diesel engine overhaul in a good and workmanlike manner, which resulted in premature and catastrophic engine failure in truck # 103 approximately one year later. Workbox also asserted that the cause of the 2012 engine failure was the negligence of Kenworth in failing to properly perform the June 2011 diesel engine overhaul; failing to meet or exceed industry standards for repair work of a diesel engine; using replacement parts, components, and/or tools that failed to meet or exceed industry standards for a diesel engine overhaul; allowing employees who were not adequately experienced, certified or trained to perform a diesel engine overhaul; failing to properly inspect and/or discover defects in the engine and/or the repair work prior to providing the repaired engine to petitioner; and failing to properly remove, replace, and install cylinder components. Additionally, Workbox asserted that Kenworth breached implied and express warranties of merchantability and fitness of the repair work performed and parts used in the repair work. Workbox claimed that it sustained damages, including damages to truck # 103's diesel engine and its components, additional expenses to repair/replace the diesel engine, loss of income and profits, increase in expenses due to loss of use of truck # 103, loss of use, and inconvenience. Workbox also specifically sought return of the entire amount it paid for the defective repairs performed by Kenworth on June 28, 2011.
Kenworth answered Workbox's petition, generally denying allegations contained therein and further answering that any alleged damages are attributable solely to Workbox's action or inaction, pleaded as a bar or reduction to Kenworth's liability. Particularly, Kenworth asserted that *1040 Workbox's damages, if any, are attributable solely to Workbox's defective, faulty, and deficient maintenance practices. Kenworth further asserted that Workbox failed to mitigate its damages. Finally, Kenworth asserted that Workbox's claims against it are prescribed.
Following a one-day bench trial, the trial court issued written reasons for judgment finding Workbox carried its burden of proving that Kenworth's failure to perform the June 2011 engine overhaul in a workmanlike manner caused truck # 103's diesel engine to fail in August 2012, resulting in damages. The trial court awarded $15,942.59 for the first engine overhaul, $18,010.74 for the second engine overhaul, and $15,500.00 for loss of business income due to truck # 103 being out of service for two months due to the second engine failure. The trial court likewise found Kenworth's claims of liberative prescription and disclaimer of warranties to be without merit. The trial court signed a judgment in conformity with its written reasons, awarding Workbox $49,453.33 in money damages, plus judicial interest and court costs. Kenworth now appeals from the trial court's judgment.
DISCUSSION
Prescription
Ordinarily, a party urging an exception raising the objection of prescription has the burden of proving facts sufficient to support the exception. See Carter v. Haygood, 04-0646, p. 8 (La. 1/19/05), 892 So.2d 1261, 1267. When evidence is introduced at the hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. Onstott v. Certified Capital Corporation, 05-2548, p. 3 (La. App. 1st Cir. 11/3/06), 950 So.2d 744, 746.
In the instant case, Kenworth contends that the claims asserted in Workbox's petition sound in tort and as such, are subject to a liberative prescriptive period of one year. Furthermore, Kenworth contends that because the evidence establishes that truck # 103's engine failed on August 2, 1012, and Workbox did not file its action until August 8, 2013, its claims are clearly prescribed.
From our review of the record, Workbox alleged in its petition that it brought truck # 103 to Kenworth for repairs in June 2011, that Kenworth performed the repairs (i.e., diesel engine overhaul) for a certain price, and that Workbox paid the price to Kenworth for the work performed. With regard to the work performed, Workbox alleged the negligence of Kenworth with regard to the 2011 diesel engine overhaul as well as the breach of contract by Kenworth by breaching its obligation to perform the June 2011 diesel engine overhaul in a good and workmanlike manner.
It is well settled that the same acts or omissions may constitute breaches of both general duties and contractual duties giving rise to actions in both tort and contract. Franklin v. Able Moving & Storage Company, Inc., 439 So.2d 489, 491 (La. App. 1st Cir. 1983). As such, a plaintiff may have two remedies, a suit in contract or an action in tort, and he may elect to recover his damages in either of the two actions. Wilson v. Two SD, LLC, 15-0959, p. 18 (La. App. 1st Cir. 12/23/15), 186 So.3d 103, 116. In such cases, the applicable prescriptive period is determined by the character the plaintiff gives to his pleadings and the form of his action. Wilson, 15-0959 at p. 19, 186 So.3d at 116. If the action is purely one in tort, then it is prescribed by one year. If the action is predicated on breach of the contract, then it is only prescribed by ten years. Wilson, 15-0959 at p. 19, 186 So.3d at 116.
A contract for work or services carries an implied obligation on the contractor *1041 to perform in a workmanlike manner, in default of which he must respond in damages for the losses that may ensue. See La. C.C. arts. 1994, 2769 ; Stipp v. MetLife Auto and Home Insurance Agency, Inc., 17-61, p. 11 (La. App. 5th Cir. 8/30/17), 225 So.3d 1182, 1189, writ denied, 17-1774 (La. 12/5/17), 231 So.3d 632. It is clear from Workbox's petition and the evidence introduced at trial that Workbox is claiming damages as a result of Kenworth's failure to perform this obligation. Accordingly, from our review of the record, we find no error in the trial court's finding that Workbox has asserted a claim for breach of the implied obligation of the service contract to perform in a workmanlike manner, and therefore, likewise find no error in the trial court's denial of Kenworth's exception raising the objection of prescription.
Breach of Contract
In order to prevail on a breach of contract claim, the plaintiff must prove by a preponderance of the evidence that: 1) the defendant owed him an obligation; 2) defendant failed to perform the obligation; and 3) defendant's failure to perform resulted in damage to the plaintiff. Stipp, 17-61 at p. 11, 225 So.3d at 1189. A party claiming that repairs are defective or unsatisfactory bears the burden of proving by a preponderance of the evidence that the work was defective. Stipp, 17-61 at p. 11, 225 So.3d at 1189-1190.
It is well settled that a court of appeal may not set aside a finding of fact by a trial court in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So.2d at 844. The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La. 1990). The effect and weight to be given such expert testimony depends upon the qualifications and experience of the expert and the underlying facts upon which the opinion is based. See ScenicLand Construction Company, LLC v. St. Francis Medical Center, Inc., 41,147, p. 9 (La. App. 2nd Cir. 7/26/06), 936 So.2d 247, 253. When an expert opinion is based on assumed facts that are not supported by the record in the case, the opinion may be rejected. Jordan v. Intercontinental Bulktank Corporation, 621 So.2d 1141, 1153 (La. App. 1st Cir.), writs denied, 623 So.2d 1335 and 1336 (La. 1993).
At trial, plaintiffs introduced the expert testimony of Junius Thomas, a certified diesel engineer. Thomas worked for Workbox as a consultant, inspecting equipment and machinery spaces and the working facility. Thomas stated that he did not know the condition of truck # 103's engine before the 2012 engine failure. Thomas stated that he externally inspected truck # 103's diesel engine in 2012 after it had been disassembled by Kenworth, and in his opinion, the cause of the 2012 engine failure was an incorrect assembly procedure, meaning something was left in the engine. According to Thomas, if dirt or contaminants got into the diesel engine in June 2011, it could cause abnormal wear and engine failure thirteen and a half *1042 months later. Thomas further stated that an engine should be cleaned before you remove it out of the compartment, because if an engine is dirty and you disassemble it, that increases the risk that dirt and contaminants can get in the engine during the repair process.
However, Thomas stated that he did not review any documents regarding the 2011 engine overhaul and he did not know what Kenworth did in 2011. Particularly, Thomas stated that he could not say that there was any dirt in the diesel engine when the 2011 engine overhaul was completed. Furthermore, while Thomas speculated that if the engine was dirty and it was not cleaned before disassembling it in 2011, then dirt could have gotten into the engine and caused the 2012 engine failure, the June 28, 2011 invoice clearly states that Kenworth "[p]ressure wash[ed] engine and surrounding area, could not see anything it was so dirty! Steam cleaned the engine and engine bay area." The June 28, 2011 invoice further states that following disassembly and reassembly of the engine, the engine was again steam cleaned. Therefore, the evidence clearly demonstrates that the engine was cleaned both prior to and following the disassembly of the engine in 2011, and therefore, there is no factual basis in the record to support Thomas's opinion that dirt or contaminants were left in or got into the engine in 2011 and that they caused the 2012 engine failure.
Additionally, Thomas stated that Kenworth had failed to document the tolerances and clearances in the 2011 diesel engine overhaul, and without proper clearances and tolerance, the risks for early engine failure are enhanced. Thomas further stated that he knew that the engine would not have failed as quickly as it did if the clearances would have been within specification and, apparently, the clearances were out of tolerance; however, he stated that he did not know that, it was just his opinion. Thomas also acknowledged in his testimony that he did not know what the tolerances were for the June 2011 engine overhaul, and that he did not personally see any evidence of any symptom of improper clearances or tolerances from the June 2011 overhaul. Therefore, the record is completely devoid of any factual evidence supporting that the tolerances or clearances in the June 2011 engine overhaul were improper, or that the failure to document these tolerances and clearances caused the 2012 engine failure.
Accordingly, based on our thorough review of the record, we find that the trial court was manifestly erroneous in affording any weight to Thomas's expert testimony, which had no factual basis in the record. Furthermore, because Workbox failed to produce any other evidence establishing that Kenworth failed to perform the June 2011 engine overhaul in a workmanlike manner, the trial court manifestly erred in finding that Workbox met its burden of establishing its entitlement to damages.[1]
CONCLUSION
For the foregoing reasons, we affirm the portion of the trial court's judgment overruling *1043 Ken worth's exception raising the objection of prescription. In all other respects, we reverse the judgment of the trial court. All costs of this appeal are assessed to Workbox, L.L.C.
AFFIRMED IN PART; REVERSED IN PART.
WHIPPLE, C.J., dissents for reasons assigned by J. Crain
McCLENDON, J. concurs in the result reaches by the majority
CRAIN, J. dissents and assigns reasons
CRAIN, J., agrees in part and dissents in part.
I agree Workbox, L.L.C.'s claim is not prescribed, and I concur to the extent the majority reverses a part of the damage award. I disagree with the majority's conclusion the trial court manifestly erred in finding Workbox met its burden of proof. That finding is adequately supported by the following evidence and the inferences reasonably drawn therefrom: (1) the rebuilt engine experienced catastrophic failure only 14 months and about 47,000 miles after the repair; (2) the oil in the engine when it failed was tested and contained no contaminants, controverting the defendant's assertion the engine failed due to ongoing contamination caused by an improperly fitted or maintained air filter; and (3) the plaintiff's expert, based on his review of the disassembled engine and the oil-test results, opined the engine failure was due to the improper reassembly of the engine in the 2011 repair. The parties presented evidence in support of dueling explanations for the engine failure-improper repair versus improper maintenance-and the trial court chose to believe the plaintiffs evidence. That finding is not manifestly erroneous.
As to the waiver of warranty, although the Louisiana Civil Code does not specifically authorize a waiver of Article 2769's implied warranty of good workmanship, such a waiver is permissible if, like a waiver of redhibitory warranties, it is clear and express. See Degeneres v. Burgess, 486 So.2d 769, 773 (La. App. 1 Cir. 1986). The subject waiver does not mention the warranty of good workmanship and appears instead to be an effort to waive any redhibitory warranties issued "in connection with this sale ." (Emphasis added.) While the plaintiff's representative acknowledged he read the provision and understood it was a "disclaimer of what warranties are being provided with the repair," he did not further elaborate or indicate any understanding that the provision, as urged by Kenworth, completely divested the plaintiff of any recourse if Kenworth, after being paid almost $16,000, failed to properly rebuild the engine. The trial court's finding the waiver did not apply to the warranty of good workmanship is not manifestly erroneous. See Degeneres, 486 So.2d at 774.
For the damage award, the trial court manifestly erred in awarding the cost of both repairs, essentially resulting in the plaintiff receiving a rebuilt engine for no charge. That aspect of the award should be limited to the expense incurred to repair the damage caused by the faulty repair, which was $18,010.74 (the bill for the second repair). I concur with the majority to the extent it reverses the award of $15,942.59, the cost of the first repair.

Kenworth also asserted on appeal that the trial court erred in failing to find that Workbox had waived all warranties as against Kenworth related to the June 2011 repair. Because we find that the trial court erred in finding that Workbox met its burden of establishing a breach of the obligation to perform in a workmanlike manner, we pretermit discussion of Kenworth's affirmative defense regarding waiver of warranty. However, we note that the waiver in the instant case, which Martin Padial, the CEO and owner of Workbox, acknowledged reading and understanding prior to his authorization of the June 2011 diesel engine overhaul, was brought to the attention of the buyer and therefore was effective as against Workbox. See Business Credit Leasing, Inc., v. Lobman, Carnahan & Batt, 635 So.2d 1196, 1199 (La. App. 5th Cir. 1994) (finding that the waiver of warranties clause was brought to the attention of lessee, an attorney, by lessee's own admission that he read the document and saw the waiver of warranties language).